STATE of Missouri, Respondent,

v.

Paul SHARP, Appellant.

No. WD 71895.

Missouri Court of Appeals,
Western District.

May 31, 2011.

Craig Allan Johnston, Columbia, MO, for appellant.

Shaun J. Mackelprang and Daniel McPherson, Jefferson City, MO, for respondent.

Division Four: LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and PATRICIA JOYCE, SP.J.

JAMES M. SMART, JR., Judge.

Paul Sharp appeals from a conviction after a bench-trial for second-degree assault on a corrections officer. Sharp was sentenced to a four-year term of imprisonment to be served concurrently with a sentence he already was serving. We affirm in part, reverse in part, and remand for resentencing.

## Statement of Facts

On June 29, 2007, Corrections Officer Terri Krull observed inmate Paul Sharp smoking a cigarette in an outdoor yard at the Western Reception Diagnostic Correctional Center in St. Joseph. Krull had caught Sharp smoking in the same area the previous day and had warned him that it was a non-smoking area. When Krull saw Sharp smoking again, she asked for his ID card and Sharp handed it to her. Krull told Sharp to put out his cigarette, but he instead walked away with the cigarette still lit. Sharp ignored Krull's orders to come back. A sergeant standing nearby told Sharp to obey Krull's orders. Sharp walked back over to Krull. Krull extended her hand as she ordered Sharp to put out his cigarette and give it to her. Instead, Sharp smashed the lit cigarette into the palm of Krull's hand causing a blister. Krull saw a doctor and was prescribed medication. Sharp was initially

charged in August 2007 with the Class C felony of second-degree assault under section 565.060, RSMo 2000.[1]

On November 17, 2008, Sharp filed a *pro se* "Motion for a Speedy Trial/180 Writ or Disposition of Warrant(s), Information or Indictment(s)" to invoke his right to a speedy trial under the provisions of the Uniform Mandatory Disposition of Detainers Law (UMDDL), sections 217.450–217.485, RSMo 2000. At the time, Sharp was incarcerated at the Northeast Correctional Center in Bowling Green, Missouri. On November 20, 2008, the prosecutor filed a writ of habeas corpus *ad prosequendum*. The docket sheet reflects that a detainer was sent to the Buchanan County Sheriff's Department and the Northeast Correctional Center on December 24, 2008. It also shows an entry of appearance by defense counsel on that same date. On February 3, 2009, an information was filed charging the same offense as alleged in the initial complaint. An arraignment was scheduled, and Sharp entered a plea of not guilty on February 23, 2009.

On March 3, 2009, defense counsel filed a motion for discovery. On March 24, 2009, a trial date was set for September 8, 2009. In preparation for trial, defense counsel filed motions to compel disclosure of discovery and for bond reduction on June 19. A hearing was set for July 2, 2009. On June 25, defense counsel filed a motion to dismiss with prejudice, alleging that the State failed to comply with Sharp's right to a speedy trial[2] by not trying him within 180 days. After a hearing, the motions were denied. In October 2009, the trial date was rescheduled for

---

1. Pursuant to section 565.060.1(2), "A person commits the crime of assault in the second degree if he ... [a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument[.]"

2. On appeal, Sharp addresses only the alleged UMDDL violation and has, therefore, abandoned any Sixth Amendment claim.

December 21, 2009. The prosecutor filed an amended information on December 4, 2009, charging Sharp with an alternative count for second-degree assault under section 565.082, RSMo, also a class C felony.

Sharp waived his right to a jury trial and was tried by Judge Daniel F. Kellogg in the Circuit Court of Buchanan County on December 21, 2009. At the close of the State's evidence, the trial court granted Sharp's motion for judgment of acquittal on Count I of the amended information (second-degree assault under section 565.060), finding that the lit cigarette was not a "dangerous instrument" in this case. At the close of all of the evidence, the court found Sharp guilty of the alternative count of second-degree assault on a corrections officer and sentenced him to four years in prison, to be served concurrently to his existing sentence. Sharp appeals.

## Point I

In his first point, Sharp claims the trial court erred in denying his motion to dismiss in violation of his due process rights and right to a speedy trial, because the court exceeded its authority in violation of the Uniform Mandatory Disposition of Detainers Law (UMDDL). He argues that he properly invoked the provisions of the UMDDL and that the State failed to bring him to trial within the 180–day time period.

## Standard of Review

■ Whether a criminal case should be dismissed based on the UMDDL is a question of law which the court reviews *de novo*. *State v. Nichols*, 207 S.W.3d 215, 219 (Mo.App.2006). To the extent the application of law is based on the evidence presented, the facts are viewed in the light most favorable to the judgment, with due deference given to the trial court's factual findings. *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo.App.2005).

## Analysis

In order to determine whether Sharp complied with the provisions of the UMDDL, we must look at the statutory language of sections 217.450–217.460 in effect at the time. Under the UMDDL, an inmate may request a final disposition of any untried charges when a detainer has been lodged against him. Section 217.450.1, RSMo 2000.

> Any person confined in a department correctional facility may request a final disposition of any untried indictment, information or complaint pending in this state on the basis of which *a detainer has been lodged against him while so imprisoned*. The request shall be in writing, addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

*Id.* (Emphasis added.)

> The request provided for in section 217.450 *shall be delivered to the director*, who shall forthwith:
>
> (1) *Certify* the term of commitment under which the offender is being held, the time already served, the time remaining to be served on the sentence, the time of parole eligibility of the offender, and any decisions of the state board of probation and parole relating to the offender; and
>
> (2) *Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the prosecuting attorney to whom it is addressed.*

Section 217.455, RSMo 2000. (Emphasis added.)

Within one hundred eighty days *after the receipt of the request and certificate, pursuant to sections 217.450 and 217.455, by the court and the prosecuting attorney* or within such additional necessary or reasonable time as the court may grant, for good cause shown in open court, the offender or his counsel being present, the indictment, information or complaint shall be brought to trial. The parties may stipulate for a continuance or a continuance may be granted if notice is given to the attorney of record with an opportunity for him to be heard. If the indictment, information or complaint is not brought to trial within the period, no court of this state shall have jurisdiction of such indictment, information or complaint, nor shall the *untried indictment, information or complaint be of any further force or effect*; and the court shall issue an order dismissing the same with prejudice.

Section 217.460, RSMo 2000. (Emphasis added.)

■■■ In order to trigger the 180–day time limit, a defendant must show that he made a good faith effort and substantially complied with the procedural requirements of the UMDDL. *See Dillard v. State,* 931 S.W.2d 157, 164 (Mo.App.1996). A fundamental procedural requirement is that a written demand for speedy disposition be addressed to the court and the prosecuting attorney where the charges are pending. *Id.* at 164–65.

In this case, Sharp contends that he substantially complied with the UMDDL when he filed his *pro se* motion for speedy trial on November 17, 2008. He claims that once the circuit court and prosecutor received his request and a detainer was filed, the State had 180 days to bring him

to trial. Sharp argues that the trial court lost authority to try him, because the 180–day time limit expired before he was brought to trial, and, therefore, his conviction and sentence should be vacated and the assault charge dismissed with prejudice.

The State, on the other hand, argues that Sharp's *pro se* motion for speedy trial filed in November 2008 was ineffective, because there was no proof that Sharp sent a copy of his request to the prosecuting attorney and there was no detainer lodged against him at that time.

■■■ We first address the issue of whether the prosecuting attorney received Sharp's request for speedy trial. The defendant has the burden of proving that the prosecuting attorney received his request for disposition. *State v. Merrick,* 219 S.W.3d 281, 285 (Mo.App.2007). Sharp claims that the record suggests that the prosecutor had notice of his speedy trial request, because the State filed a writ of habeas corpus *ad prosequendum* (Sharp was then in the Northeast Correctional Center at Bowling Green) three days after his request. Our review of the docket sheet confirms this. Based upon this entry, we conclude that we may assume the prosecutor had notice of Sharp's request.[3]

■■■ We must also determine, in accordance with the statutory language, whether Sharp substantially complied with the procedural requirements of the UMDDL when he filed his request for speedy trial before a detainer was lodged against him.

The legislative intent of the statute is to be determined from the statutory language. *State v. Wahby,* 775 S.W.2d 147, 151 (Mo. banc 1989). The language of the

---

3. The State does not dispute that the circuit court received a copy of Sharp's speedy trial request.

statute should be considered in its plain and ordinary meaning. *Id.* The legislature is presumed to have intended what the statute says, and if the language used is clear, there is no room for construction beyond the plain meaning of the law. *See State v. Thesing,* 332 S.W.3d 895, 897–98 (Mo.App.2011).

In support of its argument that a detainer was required to be lodged against Sharp before filing his speedy trial request, the State cites *Burnes v. State,* 92 S.W.3d 342 (Mo.App.2003). In *Burnes,* the defendant claimed that the circuit court failed to dispose of charges within 180 days under the UMDDL. *Id.* at 345. The defendant filed a "Demand for Trial" with the circuit court and the prosecuting attorney. *Id.* at 344. At the time, the defendant had not yet been formally charged and no detainer was lodged against him. *Id.* at 346. After being formally charged, the defendant filed a second "Demand for Trial" with the circuit court. *Id.* at 345. Defendant then filed a motion to dismiss alleging that more than 180 days had elapsed since his demand for trial was initially filed. *Id.*

On appeal, the defendant in *Burnes* argued that a presentence investigation report ("PSI") constituted the functional equivalent of a detainer and that his initial request for speedy trial became effective once formal charges were filed against him. *Id.* The Southern District disagreed, finding that the PSI report did not constitute a *de facto* detainer. *Id.* at 347. The court found that the defendant's demand for trial was premature and did not invoke the protections of the UMDDL, because the initial request was made *before any detainer had been filed against him.* *Id.* The court concluded that the 180–day time limit did not begin to run until the defendant *filed a second request for speedy trial after he was formally charged.* *Id.* at 348.

A fundamental procedural requirement of section 217.450 is that the defendant must send a written request for the disposition of untried charges on the basis of which *a detainer has been lodged against him* while so imprisoned. Section 217.450.1 was amended in 1995 to expressly require that a detainer be lodged against an inmate when he requests a disposition of untried charges in order to invoke the protection of the UMDDL.

In this case, the record indicates that no detainer was lodged against Sharp at the time he filed his *pro se* speedy trial request on November 17, 2008. Although the record reflects that a detainer was sent to the Northeast Correctional Center and to the Buchanan County Sheriff on December 24, 2008, there is nothing in the record to indicate that Sharp renewed his request for speedy trial after the detainer was filed. We also note that the docket sheet reflects there was an entry of appearance by defense counsel on the same date the detainer was mailed. However, instead of filing another request for disposition of charges on Sharp's behalf once the detainer was lodged, the record reflects no attempt by defense counsel to make another request for trial at any time. Defense counsel filed motions for discovery and a motion for bond reduction but waited until June 25, 2009, to file a motion to dismiss, alleging the 180–day time limit had expired.

We find the language of section 217.450 clear and unambiguous. Absent the court's finding that a detainer was already filed, or the functional equivalent, a defendant's premature request for disposition of charges does not trigger the 180–day time limit. *See Burnes,* 92 S.W.3d at 347–48. A speedy trial request made *before a detainer is filed* does not effectively invoke the protections of the UMDDL. *Coats v. State,* 998 S.W.2d 869 (Mo.App.1999). Ac-

cordingly, we find that the *pro se* request for speedy trial made by Sharp in November 2008 was prematurely filed and did not constitute substantial compliance under the provisions of section 217.450, since no detainer had been lodged against him.

We note also that Sharp did not cause compliance with the director's certification requirements under the UMDDL.[4] Before the 180–day time period begins to run, both the prosecutor and the circuit court must receive the defendant's request for disposition and the *director's certificate. State v. Williams,* 120 S.W.3d 294, 298 (Mo.App.2003). Section 214.455 specifically states that *the inmate must deliver the request to the director of the Department of Corrections* [DOC] in order to complete the certification of the defendant's request.

According to the plain language of the statute, the 180–day time period does not begin to run until *the prosecutor and the circuit court receive the defendant's request for disposition and the director's certificate.* See section 217.460. In order to establish that the trial court lost authority to convict Sharp, Sharp would have had to prove that the 180 days had expired without good cause and that he substantially complied with the provisions of the UMDDL, which includes showing that the circuit court and prosecutor each received a copy of his request forms containing the director's certificate. *See Tabor v. State,* 161 S.W.3d 862, 866–67 (Mo.App.2005).

Sharp contends that his failure to strictly comply with the UMDDL provisions requiring that he obtain a certificate from the director of the DOC should not deprive him of the benefits under the statute. In support of his argument, he cites *State v. Branstetter,* 107 S.W.3d 465 (Mo.App. 2003), and *State ex rel. Suitor v. Stremel,*

968 S.W.2d 221 (Mo.App.1998). In *Suitor,* the appeal involved a request to dismiss pending arson charges because the defendant was not brought to trial within the time limit under the Agreement on Detainers law. 968 S.W.2d at 221. After the defendant filed a motion for speedy trial, the prosecutor responded by sending his "Acceptance of Temporary Custody" document with the defendant's request for disposition of a detainer. *Id.* at 222. The acceptance document also contained a certificate executed by the prosecuting attorney. *Id.* The other state did not take custody as planned, and the defendant filed a motion to dismiss. *Id.*

Unlike the instant case, in *Suitor,* the court found that the allegation of noncompliance with the director's certification requirements was "*at least partially contradicted by the record.*" *Id.* at 224. The court noted that a certificate was attached to the motion and a copy was mailed to the records officer at the place of incarceration. *Id.* Moreover, there was no dispute that the records officer was an appropriate recipient of the request. *Id.* Additionally, the acceptance document executed by the prosecutor was directed to the warden of the institution. *Id.* The court also noted that the prosecutor raised no objection to the procedures followed by the defendant. As such, the court found that there was substantial compliance with the statutory requirements and that any failures complained of by the respondent were waived by the prosecutor's acceptance document. *Id.* at 225.

In *Branstetter,* the issue on appeal was whether a writ of habeas corpus *ad prosequendum* was the functional equivalent of a detainer for purposes of compliance with

---

4. Although the State raised this issue at trial, it does not challenge the director's certification requirements under the UMDDL on appeal. However, because Sharp raises this issue on appeal, we will briefly address it.

the provisions of the UMDDL. 107 S.W.3d at 470–71. The defendant claimed that the trial court erred in denying the defendant's motion to dismiss because he was not brought to trial within 180 days. *Id.* at 467. The defendant filed a *pro se* "Demand for Speedy Trial and Final Disposition of Detainers" on August 21, 2000. *Id.* The prosecutor filed a petition for writ of habeas corpus *ad prosequendum*. *Id.* at 468. The defendant claimed that the prosecutor's filing of the writ of habeas corpus *ad prosequendum* constituted the lodging of a detainer sufficient to trigger the provisions of the UMDDL. *Id.* at 470. The case was originally set for trial in January 2001. *Id.* at 468. Defense counsel filed a motion for continuance, and the case was rescheduled for trial in January 2002. *Id.* at 468–69. The defendant filed a motion to dismiss under the UMDDL, which was denied by the court. *Id.* at 469. After a bench trial on January 9, 2002, the defendant was found guilty of felony stealing. *Id.*

On appeal, the State argued that the 180–day time limit never began to run because no detainer was ever lodged against the defendant on the untried charge. *Id.* at 473. This court agreed, finding that "clearly, in order for a Missouri prisoner to obtain the protection of the UMDDL, a detainer must be lodged against him on the basis of an untried indictment, information, or complaint" under section 217.450.1. *Id.* The judgment was affirmed because no detainer was lodged against the defendant at the time he filed his demand for speedy trial. *Id.* at 478. With regard to the issue of the director's certification, the court resolved

this issue against the State, finding that the DOC did not issue the certification because the defendant had been advised that he did not have a detainer lodged against him. *Id.* at 472–73.

In this case, Sharp does not give any reason for his failure to obtain the director's certification. He merely claims that the failure to obtain the director's certificate does not defeat the substantial compliance requirement under the UMDDL.[5] Even assuming, without deciding, due to lack of evidence in the record, that Sharp was not responsible for failing to obtain the director's certificate, or that the lack of proper certification might not necessarily deprive a defendant of relief in all cases, we cannot conclude, based on other reasons in this opinion, that he substantially complied with the provisions of the UMDDL.

In any event, the record reflects that no action was taken by defense counsel claiming a violation of Sharp's rights under the UMDDL until he filed a motion to dismiss on June 25, 2009. Even assuming, *arguendo*, that we were to consider the motion to dismiss filed by defense counsel as sufficient to trigger the 180 days, then the time limit would have expired on December 22, 2009, the day after Sharp's trial. Thus, we fail to see any trial court error in denying the motion to dismiss. Point One is denied.

### Point II

In his second point, Sharp claims the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and in entering judgment and

---

**5.** In noting, in dictum, that the failure to obtain certification would not have been fatal to a claim for relief, the court in *Branstetter* cites two cases decided under the *pre-amended* version of the UMDDL: *State ex rel. Clark v. Long,* 870 S.W.2d 932 (Mo.App.1994); *State ex rel. Saxton v. Moore,* 598 S.W.2d 586 (Mo.App.1980) (courts generally do not require literal and exact compliance where prisoner makes a good faith effort); and a Colorado case, *People v. Campbell,* 742 P.2d 302, 311 (Colo. banc 1987).

sentence for second-degree assault on a corrections officer in violation of his due process rights and the right to be free from *ex-post facto* laws.[6] Sharp challenges the sufficiency of the evidence and argues that he could not have been convicted of the crime as alleged in the amended information, because the charged offense was based on a statute that was not in effect at the time of the offense in 2007. He claims the statute did not expressly include "corrections officers" among the class of persons to be protected against the crime of second-degree assault.

## Standard of Review

In his brief on appeal, Sharp sets forth a standard of review for sufficiency of the evidence. The due process clause protects a defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is the State's burden to prove each and every element of a criminal offense. *State v. Keeler*, 856 S.W.2d 928, 930 (Mo.App.1993).

Appellate review is limited to a determination of whether the State presented sufficient evidence to support the conviction. *State v. Dawson*, 985 S.W.2d 941, 951 (Mo.App.1999). This court views the evidence in the light most favorable to the judgment and grants the State all reasonable inferences from the evidence. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993).

The State points out that Sharp's argument is not primarily that the State failed to prove all of the elements of the crime of assault. Rather, Sharp is claiming that the statute under which he was convicted did not include the term "corrections offi-

cer" at the time of the offense. Thus, his argument primarily concerns the statutory language of section 565.082 and the validity of the charged offense as alleged in the amended information, rather than the sufficiency of the evidence to show that an assault occurred.

"Failure to challenge the validity of an indictment or information before a verdict is entered severely limits the scope of ... review." *State v. Baker*, 103 S.W.3d 711, 721–22 (Mo. banc 2003). "When the issue is raised for the first time on appeal, the indictment or information will be deemed insufficient only if it is so defective that (1) it [fails] by any reasonable construction [to] charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense or plead former jeopardy in the event of an acquittal are prejudiced." *Id.* at 722. A defendant will not be entitled to relief on a post-verdict claim where the information or indictment is insufficient unless the defendant demonstrates actual prejudice. *Id.* To show actual prejudice, the defendant must show that the indictment or information was so deficient that the defendant was not placed on notice as to what crime he was being charged with or so lacking in clarity that the defendant was unable to properly prepare a defense. *Id.*

## Analysis

In this case, Count II of the amended information charged Sharp with the following:

The Prosecuting Attorney of the County of Buchanan, State of Missouri, upon information and belief, charges that the defendant, in violation of Sec-

---

**6.** An *ex post facto* law is defined as: "A law that impermissibly applies retroactively, esp. in a way that negatively affects a person's rights[.]" Black's Law Dictionary 661 (9th ed.2009).

tion 565.082, RSMo, ... committed the class C felony of assault of a *corrections officer* in the second degree ... in that on or about June 29, 2007, in the county of Buchanan, State of Missouri, the defendant knowingly caused physical injury to Terri Krull, a corrections officer, by extinguishing a lighted cigarette on her hand. (Emphasis added.)

At the time of the offense in June 2007, section 565.082.1(2) did not list "corrections officers" among the class of persons protected under the statute, which provided that:

A person commits the crime of assault of a law enforcement officer, emergency personnel, or probation and parole officer in the second degree if such person ... [k]nowingly causes or attempts to cause physical injury to a law enforcement officer, emergency personnel, or probation and parole officer by means other than a deadly weapon or dangerous instrument[.]

In 2009, the statute was amended to include corrections officers and highway workers. Section 565.082.1(2), as amended, provides that:

A person commits the crime of assault of a law enforcement officer, *corrections officer*, emergency personnel, highway worker in a construction zone or work zone, or probation and parole officer in the second degree if such person ... *[k]nowingly causes or attempts to cause physical injury to a* law enforcement officer, *corrections officer*, emergency personnel, highway worker in a construction zone or work zone, or probation and parole officer by means other than a deadly weapon or dangerous instrument[.] (Emphasis added.)

The State argues that the pre-amended statute should be interpreted to include a "corrections officer" within the statutory definition of a "law enforcement officer" and, therefore, an assault on a corrections officer would still have been covered by the statute in effect in 2007.[7] The State claims the amended statute merely added clarity to the fact that corrections officers were among the class of persons intended to be protected under the statute.

Section 556.061(17) defines "law enforcement officer" as:

[A]ny public servant having both the power and duty to make arrests for violations of the laws of this state, and federal law enforcement officers authorized to carry firearms and to make arrests for violations of the laws of the United States.

The State contends that the pre-amended statute still should be applied in this case because corrections officers have the same powers granted to any law enforcement officer to make arrests and appre-

---

7. The State cites *State v. Ward*, 273 S.W.3d 43, 47 (Mo.App.2008), in which the court upheld a first-degree assault conviction on a law enforcement officer where the victim was a deputy sheriff at a county jail. The State claims the *Ward* case supports its argument in favor of construing the language of the pre-amended statute in the instant case to include a "corrections officer" within the definition of a law enforcement officer. The State contends that because the deputy sheriff was considered to be a law enforcement officer while acting in the capacity as a "jailer," we should apply the same reasoning to a corrections officer. The *Ward* case is distinguishable on its facts. First, there was no dispute at issue in *Ward* as to whether the deputy sheriff was considered to be a "law enforcement officer" under section 565.081, RSMo. Section 565.081 was amended in 2009 to include "corrections officers." We also do not agree that a corrections officer at a prison facility can be equated to a deputy sheriff at a county jail in terms of law enforcement powers and duties for purposes of statutory interpretation of section 565.082.

hend offenders under section 217.280.[8] Section 217.280 allows the director of the DOC to authorize others the limited power to arrest escaped prisoners and apprehend those aiding escaped prisoners. This statute does not mention corrections officers, nor does it expressly give a corrections officer the same authority and powers as law enforcement officers to make arrests for violations of state laws under section 556.061(17).

Sharp argues that a "corrections officer" would not be considered to be a *law enforcement officer* under section 565.082.1(2), and, therefore, he could not be convicted of assaulting a law enforcement officer. He also contends that he could not be convicted of the charged offense, because the term "corrections officer" was not expressly listed under the pre-amended statute. We agree.

"The primary purpose of statutory construction is to ascertain the intent of the legislature, and to give effect to that intent." *Wahby,* 775 S.W.2d at 151. We must determine the legislative intent, where possible, from the statutory language and consider the plain and ordinary meaning of the words used in the statute. *Id.* In the case of a criminal statute, however, we cannot liberally infer what is not expressed. *See id.* If there is any doubt as to the meaning of a criminal statute, it must be resolved in favor of the defendant. *Id.* We ordinarily presume that any omitted terms were not intended to be included within the scope of the statute. *See Thesing,* 332 S.W.3d at 898. Also, when the legislature amends an existing statute, any change in the law is generally deemed to have an intended effect. *State ex rel. Dir.*

*of Revenue v. Gaertner,* 32 S.W.3d 564, 567 (Mo. banc 2000).

In this case, section 565.082 was amended to expressly include "corrections officers" in 2009. Accordingly, we assume that the legislature did not understand that "corrections officers" would necessarily be included within the scope of the statute in effect in 2007. Therefore, this court cannot extend the meaning of the statute to include a class of persons that were not expressly listed at the time of the offense.

A prerequisite to the second-degree assault conviction under section 565.082 is that Krull had to be a "law enforcement officer" as defined in section 556.061(17). Notwithstanding the State's argument that correction officers are granted similar powers as law enforcement officers under section 217.280, the authority of a director of the DOC to grant limited powers to designated persons to apprehend an escaped prisoner does not mean that we can conclude, as a matter of statutory construction, that the legislature intended for corrections officers to constitute law enforcement officers for purposes of section 565.082. The fact that section 565.082 was amended to specifically include corrections officers and highway workers within the statutory language would appear to confirm the presumption that the amendment to the statute was for the purpose of including corrections officers and highway workers within the enhanced penalty.

In view of the foregoing, we find that Count II of the amended information erroneously and retrospectively referred to the charged offense as second-degree assault on a "corrections officer" in violation of

---

8. Section 217.280.2 states: "Those persons authorized to act by the director [of the Department of Corrections] shall have the same power as granted any law enforcement officers in this state to arrest escaped offenders and apprehend all persons who may be aiding and abetting such escape as defined in section 217.390."

section 565.082, RSMo.[9] Because corrections officers were not expressly listed in the statute at the time of the offense in 2007, we conclude that Sharp should not have been convicted of the second-degree assault charge as alleged in the information. Accordingly, we conclude that the trial court erred in finding Sharp guilty of second-degree assault under section 565.082.

 Notwithstanding the foregoing, this court may enter a conviction and sentence for a lesser-included offense if the evidence was sufficient for the fact-finder to find each of the elements of the lesser offense. *State v. Dixon,* 70 S.W.3d 540, 546 (Mo.App.2002).[10]

Section 556.046 outlines the grounds for an offense to be a lesser-included offense:

1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when: (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or (2) It is specifically denominated by statute as a lesser degree of the offense charged; or (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

In this case, a lesser-included offense to second-degree assault would be the class A misdemeanor of third-degree assault. Section 565.070.1(1), RSMo 2000. In order to find a defendant guilty of third-degree assault under section 565.070.1(1), the evidence must be sufficient to show that the defendant "attempt[ed] to cause or recklessly cause[d] physical injury to another person[.]"[11] Here, the court found that Sharp knowingly caused physical injury to Krull by extinguishing a lit cigarette on her hand.[12] Our review of the record supports this finding. As such, we conclude that there was sufficient evidence for the court to find Sharp guilty of third-degree assault under section 565.070.1(1), a class A misdemeanor.

## Conclusion

We affirm the trial court's denial of Sharp's motion to dismiss for violation of the UMDDL. We reverse the second-degree assault conviction and remand for resentencing on the lesser-included offense of third-degree assault.

All concur.

9. On appeal, the State concedes that the amended information "may have mistakenly" referred to an assault on a corrections officer but asserts that Sharp still had sufficient notice that he was being charged with assaulting a law enforcement officer and that he had adequate notice to prepare a defense for the assault charge.

10. In view of our finding that section 565.082 did not include corrections officers at the time of the offense in 2007, the State requested, in the alternative, that Sharp be convicted of the lesser-included offense of third-degree assault, a class A misdemeanor, pursuant to

section 565.070, RSMo. Defense counsel also requested a finding of the lesser-included offense of third-degree assault in the event we did not dismiss the conviction.

11. The culpable state of mind of recklessness is established when a person acts knowingly. Section 562.021.4.

12. While Sharp asserts in his Reply Brief that the State failed to prove that he assaulted *a law enforcement officer,* he does acknowledge that the State proved that Sharp assaulted a corrections officer (Krull).