**STATE of Missouri, Plaintiff–Appellant,**

v.

**Darrell G. DELONG, Defendant–Respondent.**

**No. SD 30928.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 30, 2011.

Chris Koster, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

Craig A. Johnston, Columbia, MO, For Respondent.

JEFFREY W. BATES, Judge.

Darrell Delong (Defendant) was charged with a number of felonies and a misdemeanor in three separate cases in Lawrence County, Missouri. The trial court entered an order dismissing the charges in all three cases with prejudice based upon the State's alleged failure to bring Defendant to trial within the 180–day time limit specified in the Interstate Agreement on Detainers (IAD). *See* § 217.490.[1] The State has appealed the dismissal. This Court reverses and remands the case for further proceedings.

Between May and June 2009, the Lawrence County prosecutor charged Defendant with the following felonies: leaving the scene of an accident; first-degree tampering; resisting arrest; first-degree burglary; stealing; and two counts of receiving stolen property. *See* § 577.060 RSMo (2000); § 569.080; § 575.150; § 569.160 RSMo (2000); § 570.030; § 570.080. In addition, Defendant was charged with the misdemeanor of driving while his license was revoked. *See* § 302.321. The foregoing charges were filed against Defendant in three separate cases (hereinafter referred to as the Lawrence County cases).

In August 2009, Defendant was taken into custody in Oklahoma on charges originating from that state and was later incarcerated in the Oklahoma Department of Corrections (DOC). While incarcerated in Oklahoma, Defendant filed a "Request for Disposition of Detainer" in the Lawrence County cases on April 23, 2010. At that time, no detainer relating to these cases had been lodged against Defendant. On April 26, 2010, the Lawrence County prosecutor sent a letter to Oklahoma DOC officials requesting that they "place a detainer" on Defendant and that "the proper forms under the IAD be given to the defendant so that the paperwork can be started to bring the defendant back to Lawrence County." At no point after the detainer was lodged against Defendant did he renew his request for disposition of the charges against him by delivering the two written notices and certificate required by the IAD.

In September 2010, Defendant was brought before the trial court in Lawrence County for a preliminary hearing. At that time, Defendant requested that the

---

1. All references to § 217.490 are to RSMo (2000). All further references to statutes are to RSMo Cum.Supp. (2008) unless otherwise specified.

charges in the Lawrence County cases be dismissed. The court initially denied the request, and Defendant filed a motion to reconsider. On October 21, 2010, the trial court granted Defendant's motion to dismiss. The court found that: (1) Defendant filed his request for disposition of detainer on April 23, 2010; and (2) a detainer was lodged against Defendant by the Lawrence County prosecutor via his April 26, 2010 letter. The court determined that Defendant's request on April 23, 2010 triggered the 180–day time limit for him to be brought to trial on the charges in the Lawrence County cases. Because Defendant was not tried within 180 days, the court concluded that Defendant was entitled to have all pending charges against him dismissed with prejudice pursuant to § 217.490. This appeal followed.[2]

In the State's single point on appeal, it contends the trial court misapplied the law by dismissing all pending charges in the Lawrence County cases with prejudice pursuant to § 217.490. The State argues that Defendant is not entitled to IAD-based dismissals because no detainer relating to the Lawrence County cases had been lodged against Defendant when his request for disposition was filed on April 23, 2010. We agree.

■ "Whether the trial court properly interpreted and applied the IAD to the facts is a question of law which this Court reviews *de novo*." *State v. Woods*, 259 S.W.3d 552, 555 (Mo.App.2008).[3] "The

IAD is a congressionally-sanctioned interstate agreement that permits a prisoner in one state to seek disposition of criminal charges filed against him by [a] second state." *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo.App.2005); *Woods*, 259 S.W.3d at 555. The primary purpose of the IAD is to provide for prompt disposition of detainers. *State v. Davis*, 210 S.W.3d 229, 235 (Mo.App.2006); *State v. Vinson*, 182 S.W.3d 709, 711 (Mo.App.2006). A "detainer" is a legal order that requires a state in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different state for a different crime. *Davis*, 210 S.W.3d at 234–35.

As adopted by Missouri and other states (including Oklahoma), the IAD requires prison officials to promptly inform the prisoner of any detainer lodged against him and of his right to request final disposition of an indictment, information or complaint pending in the second state. § 217.490, Art. III, ¶ 3; *see generally* Okla. Stat. tit. 22, §§ 1345–1349. A prisoner's request for disposition of the charges must be in writing and shall operate as a request for final disposition of all untried charges for which detainers have been issued by the second state. § 217.490, Art. III, ¶ 1, 4. Upon receipt of the written notice, the second state may take temporary custody of the prisoner and must dispose of the pending charges within 180 days. *Id.* at ¶ 1; *see Lybarger*, 165 S.W.3d

---

2. The State has the right to appeal this final judgment, which resulted in the outright dismissal with prejudice of all pending charges in the Lawrence County cases, pursuant to § 547.200.2 RSMo (2000); *see State v. Brown*, 140 S.W.3d 51, 53 (Mo. banc 2004); *State v. March*, 130 S.W.3d 746, 748 (Mo.App.2004).

3. Because we review *de novo* the trial court's application of the IAD statute to the undisputed facts, we find no merit in Defendant's arguments that the State did not properly preserve the issue for appellate review or that we must have a transcript of the attorneys' legal arguments at the motion hearing in order to decide this appeal.

at 184. To invoke these provisions, a prisoner must make a good faith effort to substantially comply with the IAD's requirements, omitting nothing essential to the statute's operation. *See Woods,* 259 S.W.3d at 556–57; *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo.App.1980). Insofar as relevant to the issue presented by this appeal, Article III, Paragraph 1 of the IAD sets forth the procedure to be followed to trigger commencement of the 180–day period:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which *a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner....

§ 217.490, Art. III, ¶ 1 (italics added). The IAD is to be construed in harmony with the Uniform Mandatory Disposition of Detainers Law (UMDDL), which is an act providing prisoners with similar protections for intrastate detainers. *State v. Smith,* 686 S.W.2d 543, 547 (Mo.App.1985); §§ 217.450–.485; *see State v. Overton,* 261 S.W.3d 654, 662 (Mo.App.2008) (the IAD and the UMDDL are *in pari materia* so that the principles of one may be applied to the other).

■ Missouri courts have already decided that a detainer must be lodged against a prisoner *before* he can invoke the protections of the IAD. In *Hicks v. State,* 719 S.W.2d 86 (Mo.App.1986), Hicks was charged in Dallas County, Missouri, with escape. *Id.* at 87. He was charged in Webster County with robbery. *Id.* While incarcerated in California, Hicks filed a request for disposition of the charges against him on September 19, 1977. *Id.* at 89. On January 18, 1978, Hicks pled guilty in Dallas County to the escape charge. *Id.* at 87. On March 7, 1978, the Webster County prosecutor lodged a detainer relating to the robbery charge against Hicks. *Id.* At trial, Hicks moved for dismissal of the robbery charge on the ground that his trial occurred 226 days after his request for disposition on September 19, 1977. The motion was denied, and Hicks was convicted. On appeal, he argued for reversal based upon the IAD. Citing a number of IAD cases from other jurisdictions, this Court rejected Hicks' argument for the following reason:

> Since no detainer had been lodged against Hicks with respect to the Webster County robbery charge at the time Hicks claims he made a request for final disposition [September 19, 1977] his request, even if properly made with respect to the Dallas County charges, was ineffective with respect to the robbery charge and the Agreement on Detainers was not triggered with respect to the latter.

*Id.* at 90 (footnote omitted). In *State v. Howell,* 818 S.W.2d 681 (Mo.App.1991), the western district of this Court cited *Hicks* for the proposition that "a prisoner in a sending state cannot 'request' disposition of a detainer and pending charges, and so invoke the [IAD] limitations, where no de-

tainer exists." *Id.* at 682 n. 1.[4]

■ Under the UMDDL, the 180–day time limit also is triggered only when a detainer has been lodged against the prisoner. *See State v. Buckles*, 636 S.W.2d 914, 921 (Mo. banc 1982) (holding that the UMDDL "specifically provides" that its 180–day time limit only commences when a detainer has been lodged against the prisoner)[5]; *State v. Sharp*, 341 S.W.3d 834, 839 (Mo.App.2011) (holding that "[a] fundamental procedural requirement of [the UMDDL] is that the defendant must send a written request for the disposition of untried charges on the basis of which *a detainer has been lodged against him* "); *Burnes v. State*, 92 S.W.3d 342, 347 (Mo. App.2003) ("[a]bsent the presence of a detainer, [the UMDDL] does not allow Movant to request a final disposition of the Greene County charges"); *Coats v. State*, 998 S.W.2d 869, 869 (Mo.App.1999) ("a detainer must be filed before a prisoner can invoke the protections of UMDDL"); *Tillman v. State*, 939 S.W.2d 388, 389 (Mo.

App.1996) (same holding); *State v. Smith*, 849 S.W.2d 209, 213 (Mo.App.1993) (same holding).

Defendant argues, however, that he is entitled to dismissal because he substantially complied with the IAD's procedural requirements. Defendant relies upon *State ex rel. Saxton v. Moore*, 598 S.W.2d 586 (Mo.App.1980), which states that "[i]f the prisoner makes a good-faith effort to bring himself within the Agreement's purview, and omits nothing essential to the Agreement's operation, then his failure of strict compliance will not deprive him of its benefits." *Id.* at 590. Defendant argues that his act of filing a request for disposition before any detainer was lodged against him constitutes substantial compliance with the IAD's procedural requirements. We disagree.

This same argument was recently addressed in *State v. Sharp*, 341 S.W.3d 834 (Mo.App.2011). There, Sharp filed a request for disposition of charges before a detainer was lodged against him. *Id.* at

---

**4.** These Missouri appellate cases refute Defendant's argument that the IAD does not require the detainer to be filed before the request for disposition. *Commonwealth v. Petrozziello*, 22 Mass.App.Ct. 71, 491 N.E.2d 627 (1986), contains a persuasive explanation of the rationale for rejecting this argument:

> The defendant contends that the four requirements which trigger the relevant time periods in the Agreement do not have to occur in any special sequence.... If carried to its logical extreme, however, such an approach would likely cause considerable confusion. For example, immediately upon pretrial detention, prisoners could file requests under the Agreement for final disposition of all charges pending in other jurisdictions, even though they had not yet been convicted of the offenses for which they were held, had their places of confinement finally determined, or had detainers lodged against them. Prosecuting officers would, in turn, be pressed to file detainers prematurely in order to avoid the loss of their

rights to prosecute. Not surprisingly, there is little authority to support the argument favoring this methodology.

*Id.* at 632 (footnote omitted). At oral argument, defense counsel took the position that the plain language of the IAD required the 180–day time limit to begin running upon receipt of Defendant's request for disposition of the charges, even though no detainer had been lodged against him at that time. Under Defendant's proposed interpretation of § 217.490, he still would be entitled to a dismissal with prejudice even if: (1) a detainer had been lodged against him 179 days after he filed his request for disposition; and (2) the State could not try him the next day. We decline to adopt such an unreasonable interpretation of the statute.

**5.** *Buckles* was abrogated on other grounds by *State v. Waller*, 816 S.W.2d 212, 213 (Mo. banc 1991).

838. The western district of this Court construed language in the UMDDL, similar to that in the IAD, permitting a prisoner to request a final disposition of untried charges on the basis of which "a detainer has been lodged against him ..." § 217.450.1; *Sharp*, 341 S.W.3d at 839. The western district held that the lodging of a detainer against Sharp was a "fundamental procedural requirement of section 217.450...." *Sharp*, 341 S.W.3d at 839. Once the detainer was actually lodged against Sharp, there was no indication in the record that he renewed his request for disposition of the untried charges. *Id.* Based on the "clear and unambiguous" language of the statute, the western district held that "[a]bsent the court's finding that a detainer was already filed, or the functional equivalent, a defendant's premature request for disposition of charges does not trigger the 180–day time limit." *Id.* Accordingly, the western district held that Sharp's premature request did not constitute substantial compliance with the UMDDL because no detainer had been lodged against him with respect to those untried charges. *Id.* at 840.

We reach the same conclusion here. The IAD applies only when "a detainer *has been* lodged against the prisoner." § 217.490, Art. III, ¶ 1 (emphasis added). We hold that the lodging of a detainer against the prisoner is a fundamental procedural requirement of § 217.490 and must have occurred *before* a request for disposition of the untried charges can be effective. *See Sharp*, 341 S.W.3d at 839. Because no detainer had been lodged against Defendant when he made his request for disposition on April 23, 2010, the IAD's 180–day time limit was not triggered. *See id.*; *State v. Howell*, 818 S.W.2d 681, 682 n. 1 (Mo.App.1991);

*Hicks v. State*, 719 S.W.2d 86, 90 (Mo. App.1986). Consequently, the trial court misapplied the law by dismissing the Lawrence County cases with prejudice. The State's point is granted.

The judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

SCOTT, J. and FRANCIS, P.J., concur.