**Richard CARBAUGH, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SD 30684.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 4, 2011.

Alexa Irene Pearson, Columbia, for Appellant.

Chris Koster, Attorney General and John W. Grantham, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Richard Carbaugh ("Carbaugh") appeals the motion court's denial of his Rule 24.035 [1] motion for post-conviction relief following an evidentiary hearing. Finding no merit to Carbaugh's claims, we affirm.

### Facts and Procedural History

On March 16, 2007, after Carbaugh failed to appear for a preliminary hearing, warrants were issued for him by the Maries County Associate Circuit Court.

On June 28, 2007, pursuant to section 217.490—Interstate Agreement on Detainers ("IAD"),[2] Carbaugh caused a written notice of place of imprisonment and request for final disposition of detainers to be delivered to the prosecuting attorney and the Circuit Court of Crawford County on charges lodged against him there. The notice included an "Agreement on Detainers Form IV[-]Offer to Deliver Temporary Custody" and "Agreement on Detainers

---

1. All rule references are to Missouri Court Rules (2011), and all references to statutes are to RSMo Cum.Supp.2006 unless otherwise indicated.

2. The IAD is a compact entered into by 48 states, the United States, and the District of Columbia establishing procedures for resolution of one state's outstanding charges against a prisoner of another state. *Rivera v. State,* 106 S.W.3d 635, 639 (Mo.App. S.D.2003).

Form III[-]Certificate of Inmate Status" both signed by the warden of the Centralia Correctional Center, Centralia, Illinois, where Carbaugh was incarcerated at the time. On July 3, 2007, Carbaugh's notice was received by the prosecuting attorney and the Circuit Court of Crawford County.

Carbaugh also caused the same notice to be delivered to the Maries County prosecuting attorney; however, it was not delivered to or received by the Circuit Court of Maries County. The Maries County charges were not brought to trial before January 1, 2008, and no continuances were granted between July 3, 2007 and January 1, 2008.

On April 14, 2008, the prosecuting attorney of Maries County filed two informations charging Carbaugh, as a persistent offender, with the class D felony of resisting a lawful stop and the class B felony of attempt to manufacture a controlled substance.

On September 3, 2008, after a change of venue to Pulaski County, Carbaugh appeared with plea counsel before the trial court to enter guilty pleas in both cases pursuant to plea agreements with the State. Upon examination by the trial court, Carbaugh stated he had sufficient time to speak with plea counsel and that he did not have any questions for him. Carbaugh indicated he had graduated from high school and that he could read and write. Carbaugh denied he suffered from any mental disease or defect. Carbaugh stated he spoke with plea counsel about the facts of his cases and about possible legal defenses. Carbaugh testified that plea counsel informed him about his rights to a trial and to file motions. The trial court also examined Carbaugh regarding his rights attendant to trial, including his right to a trial, right to subpoena witnesses, and right not to testify. Carbaugh indicated that he understood each right and that he was giving up those rights by pleading guilty. Carbaugh stated he understood the range of punishment for the charges.

The trial court asked Carbaugh to explain how he was guilty of the attempt to manufacture methamphetamine, and Carbaugh testified he "gathered precursors and made an attempt to manufacture methamphetamines [sic]." The State recommended Carbaugh serve seven years on this charge, to run concurrently with all other sentences that Carbaugh was currently serving in other jurisdictions. Carbaugh agreed that the State's recommendation followed the plea agreement. The trial court asked Carbaugh to explain his actions that formed the basis for the resisting a lawful arrest charge, and Carbaugh indicated that he "eluded the police officers, knowing that [he] had a felony warrant for his arrest." Carbaugh also admitted that he failed to stop at stop signs and drove at a high rate of speed; thus, creating a "substantial risk of serious physical harm or injury to other persons." The State recommended Carbaugh be sentenced to three years on this charge, to be served consecutively to the seven-year sentence, but concurrently with the sentences Carbaugh was already serving. Carbaugh again agreed that the State's recommendation followed the plea agreement. Carbaugh agreed he went over the petitions to enter guilty pleas with plea counsel, that plea counsel read the entirety of both documents to him, and that plea counsel explained Carbaugh's trial rights, the factual basis for the crimes, and the ranges of punishment. Carbaugh acknowledged executing the documents. Carbaugh indicated he wanted the trial court to accept his guilty pleas.

The trial court accepted Carbaugh's guilty pleas as "freely and voluntarily" given. The trial court sentenced Carbaugh according to the plea agreements.

The trial court then examined Carbaugh regarding his plea counsel's assistance. Carbaugh indicated that he spoke with plea counsel about his cases, that plea counsel answered all of his questions, and that plea counsel did everything that Carbaugh asked of him. Carbaugh stated that plea counsel talked to him about possible trial strategies and motions that could be filed. Carbaugh denied there was anything that plea counsel failed to do that Carbaugh wanted him to do. Carbaugh denied that he had any complaint or dissatisfaction with plea counsel's services. The trial court found a lack of probable cause that plea counsel provided ineffective representation.

On February 2, 2009, Carbaugh filed a *pro se* motion for post-conviction relief. On August 14, 2009, post-conviction counsel filed an amended Rule 24.035 motion alleging the trial court was without jurisdiction to enter judgment and conviction against Carbaugh because it did not do so within 180 days of Carbaugh delivering a request for the final disposition of detainers to the prosecuting attorney of Maries County. Carbaugh also alleged plea counsel was ineffective for failing to act upon Carbaugh's insistence that he challenge the trial court's jurisdiction.

On April 19, 2010, the motion court held an evidentiary hearing on Carbaugh's motion. At the hearing, the parties stipulated to numerous facts, which are set forth above, regarding Carbaugh's attempts to request a final disposition of his Missouri detainers.

Carbaugh testified that he missed a court date on the Maries County charges because he was in custody in Illinois which resulted in warrants being issued for his arrest. Carbaugh stated that he also discovered that he had charges pending against him in Crawford County, Missouri. Carbaugh testified that, as a result, he executed a request for final disposition of detainers and asked the Illinois prison authorities to distribute the request to all the counties in Missouri that had lodged charges against him. According to Carbaugh, he instructed his plea counsel in the Maries County cases that he had requested a disposition of detainers and that the time had passed for the court to bring him to trial. Carbaugh stated that he asked plea counsel to file a motion to have his case dismissed, but that plea counsel did not comply. Carbaugh explained that plea counsel told him that he did not believe that Carbaugh had effectively exercised his rights under the IAD because no request was filed with the Circuit Court of Maries County. Carbaugh stated that he tried to show plea counsel his paperwork, but plea counsel was not interested in seeing it.

Plea counsel testified he advised Carbaugh that he did not believe Carbaugh had effectively invoked the provisions of the IAD because the Circuit Court of Maries County had not received a copy of Carbaugh's request for final disposition of detainers. Plea counsel stated that he also looked at the documents that Carbaugh provided indicating copies had been sent to a number of officials, but that the Circuit Court of Maries County was not one of the officials listed. Plea counsel stated that he not only looked at the Missouri Case.net website, but also the Maries County circuit clerk's physical file and did not find that a copy of Carbaugh's request had been filed with the Circuit Court of Maries County. Plea counsel stated that he sent Carbaugh

a letter explaining why he did not think that Carbaugh could prevail on his IAD claim; to the letter, he attached three Missouri appellate opinions which did not support Carbaugh's position. Plea counsel stated that he also communicated his research to the attorney who represented Carbaugh on his Crawford County cases and advised him that he thought Carbaugh had a much stronger claim there because Carbaugh had effectively served his request for final disposition of detainers on both the Crawford County prosecuting attorney and circuit court.

On May 19, 2010, the motion court entered written findings of fact, conclusions of law, and an order overruling Carbaugh's motion. The motion court found, in part that: (1) Carbaugh "did not properly invoke the [IAD] because he did not file the request with the Circuit Court of Maries County"; (2) plea counsel "exercised customary skill and diligence in representing [Carbaugh]"; and (3) Carbaugh "waived any alleged errors by [plea] counsel concerning detainers when he voluntarily pled guilty."

On appeal, Carbaugh claims the motion court clearly erred in denying Carbaugh's motion because: (1) Carbaugh, despite being entitled to dismissal of the charges pursuant to the IAD, was permitted to plead guilty, rendering his pleas involuntary and unknowing; and (2) his plea counsel provided ineffective assistance of counsel for failing to pursue a dismissal on this basis and failing to advise Carbaugh that pleading guilty waived that claim.

## Standard of Review

■ Appellate review of the motion court's denial of post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 24.035(k). The movant bears the burden of proving grounds for relief asserted in the motion by a preponderance of the evidence. Rule 24.035(i). "The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D.2010).

## I. IAD Not Properly Invoked

First, we determine whether Carbaugh waived any potential defenses under the IAD as a result of his guilty pleas.

■ As adopted by Missouri, Article III of the IAD provides that a prisoner

shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information or complaint[.]

§ 217.490, Art. III.1. A guilty plea that is voluntary and knowing waives all non-jurisdictional defects and defenses. *Rivera v. State*, 106 S.W.3d 635, 640 (Mo.App. S.D.2003). "The 180–day limitation of the IAD is considered non-jurisdictional and therefore, is waivable by a prisoner's subsequent guilty plea." *Id.*

■ Carbaugh's only allegation that the guilty pleas were not knowing or vol-

untary is based on the fact that plea counsel would not raise any issue about the non-compliance with the IAD and Carbaugh was not advised that a guilty plea would waive these claims. However, "[w]hether [a] [d]efendant was aware that he was waiving his IAD protections does not matter because there is no requirement that waiver of IAD protections must be made knowingly or intelligently." *State v. Vinson*, 182 S.W.3d 709, 713 (Mo.App. E.D.2006). Additionally, there is nothing in the record to suggest the trial court knew Carbaugh had attempted to invoke his rights under the IAD; thus, there is no error of which to condemn the trial court. Under thorough questioning by the trial court, Carbaugh agreed that his guilty plea was voluntary, knowing, and understanding. We find no evidence to indicate otherwise and find no abuse of discretion in the trial court's determination that Carbaugh's guilty plea was voluntary. Accordingly, the motion court's finding was not clearly erroneous, and a review of the record does not leave us with a definite and firm impression that a mistake has been made. Point I is denied.

## II. Counsel Not Ineffective

Next, we determine whether the motion court clearly erred in denying Carbaugh's claim that plea counsel was ineffective for failing to move for dismissal of the charges based on the IAD and failing to advise Carbaugh that pleading guilty waived this claim.

■ "Movant bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence." *Rivera*, 106 S.W.3d at 638. In order to prevail on a claim of ineffective assistance of counsel, movant must show: "(1) Counsel failed to exercise the customary skill and diligence

that a reasonably competent attorney would exercise in similar circumstances, and (2) Counsel's failure prejudiced Movant." *Id.* at 638; *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish prejudice, movant must show that a reasonable probability existed that, but for counsel's error, movant would not have pleaded guilty but would have proceeded to trial. *Rivera*, 106 S.W.3d at 638–39.

■ "When a movant who has pled guilty to an offense files a motion for postconviction relief, he waives all errors regarding ineffective assistance of counsel except those that affect the voluntariness and knowledge of the plea." *Rivera*, 106 S.W.3d at 638. Therefore, because Carbaugh entered guilty pleas, the effectiveness of his plea counsel is relevant only to the extent that it affected the voluntariness of the plea. *Id.* "Absent an abuse of discretion, we will defer to the trial court's determination of whether a defendant's guilty plea was voluntary." *Id.*

■ Carbaugh bases his ineffective assistance of counsel claim on the conclusion that Carbaugh had properly invoked his rights under the provisions of the IAD. This conclusion, however, is incorrect. Carbaugh contends proper notice to the Crawford County prosecutor and circuit court also operated as notice to all jurisdictions in Missouri. However, the Supreme Court of Missouri determined that the 180–day limitation period of Article III.1 does not commence until receipt of the IAD by the proper Missouri authorities, including *both* the prosecutor's office and the circuit court. *Rivera*, 106 S.W.3d at 639. Carbaugh acknowledges the Circuit Court of Maries County did not receive notice, and further there is no evidence

that the Maries County prosecutor's actions waived this requirement.[3]

 While Carbaugh is correct that courts have noted that a good-faith effort to invoke the provisions of section 217.490 is sufficient, he fails to recognize that if an irregularity in compliance results in the omission of an essential element, the prisoner's rights under the IAD are not invoked. *Rivera,* 106 S.W.3d at 639. Importantly, "[n]otice to both the prosecutor and the appropriate court is considered an essential element; therefore, lack of notice to one is not a mere technical error." *Id.* In *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 1091, 122 L.Ed.2d 406 (1993), the United States Supreme Court held that "the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and the prosecuting officer of the jurisdiction that lodged the detainer against him." Thus, Carbaugh did not trigger the 180–day limitation period because he did not show that he requested final disposition from the Circuit Court of Maries County, where the detainers were issued.[4]

Moreover, the record shows that plea counsel listened to Carbaugh's allegations, reviewed Carbaugh's documents, investigated the circuit court's file, discussed with Carbaugh his lack of specific compliance with the IAD statute, and provided Carbaugh with supporting case law. Based on plea counsel's review of relevant case law, he correctly determined that a motion to dismiss based on provisions of the IAD would be unsuccessful and thus plea counsel did not err in failing to litigate Carbaugh's claim that the trial court lacked authority by failing to bring Carbaugh to trial within the 180–day limitation period provided by the IAD. Accordingly, we find plea counsel exercised the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances. Point II is denied.

Therefore, we affirm the judgment of the motion court.

BARNEY and BATES, JJ., Concur.

---

3. It is possible for a prosecutor, by his or her actions, to waive the requirement that a prisoner must also send his request for final disposition to the circuit court. *State v. Walton,* 734 S.W.2d 502, 503 n. 5 (Mo. banc 1987). Such waiver may be accomplished "by requesting, being offered, and receiving temporary custody of [the prisoner]." *Id.* at 502 n. 2.

4. Carbaugh further attempts to place the burden on the prosecutor of Maries County to cause delivery of the notice to the appropriate court, similar to the defendant in *Yagovane v. State,* 923 S.W.2d 522 (Mo.App. W.D.1996). In *Yagovane,* the defendant caused his request for disposition of Missouri's detainer to be sent to the prosecuting attorney of Lafayette County, but the circuit court never received its copy. The defendant argued that the attempt to mail the necessary notice to the circuit court by way of mailing it in care of the prosecutor, placed the onus on the prosecutor to forward the notice to the circuit court. *Id.* at 523. The appellate court rejected the defendant's argument and found "[s]ection 217.490, art. III.2, placed the burden on [the defendant] to deliver his request to the proper authorities." *Id.* Specifically, it noted that obligation included the duty to properly address the forms and that a violation of the requirements of the statute is not "a mere technical error." *Id.* (internal quotation marks omitted).