**STATE of Missouri, Respondent,**

v.

**James E. LYBARGER, Appellant.**

**No. WD 62887.**

Missouri Court of Appeals, Western District.

June 14, 2005.

Amy M. Bartholow, Columbia, MO, for Appellant.

Deborah Daniels, Jefferson City, MO, for Respondent.

Before HARDWICK, P.J., ULRICH and NEWTON, JJ.

LISA WHITE HARDWICK, Judge.

James Lybarger appeals from his jury conviction on two counts of second-degree robbery, § 569.030,[1] and two counts of attempted second-degree robbery, § 564.011. He contends the trial court erred in denying his pretrial motions to dismiss the charges based on alleged violations of the Interstate Agreement on Detainers (IAD), § 217.490. He also contends the evidence was insufficient to support his conviction on one of the second-degree robbery charges. Finding no error, we affirm the convictions.

## I. FACTUAL AND PROCEDURAL HISTORY

Lybarger's convictions arise from a series of robberies and attempted robberies that occurred in Clay County, Missouri, on October 13–14, 1999. One day after the crime spree, Lybarger was apprehended in Kansas pursuant to a Missouri "stop order." He was arrested and convicted on Kansas charges and then placed in the custody of the Kansas Department of Corrections (KDOC) to serve a fifteen month sentence.

The history of Lybarger's interstate transfer from Kansas to Missouri is the basis for his claims of error under the IAD. The State of Missouri issued three detainers against Lybarger while he was in the custody of the KDOC.

The first detainer was issued on October 15, 1999, in Clay County Case No. 4474, wherein Lybarger was charged with one count of second-degree robbery. The KDOC informed Lybarger about the detainer on December 19, 2000. Two months later, on February 23, 2001, Lybarger was given written notice of the detainer and his right to disposition of all pending matters in Missouri for which any detainer had been lodged against him.

The State issued a second detainer against Lybarger on December 1, 1999, in connection with a five-count indictment in Clay County Case No. 5085 (the case at issue in this appeal). Count I of the in-

---

1. All statutory citations are to the Missouri Revised Statutes 1994, unless otherwise noted.

dictment presented the same robbery allegations as Case No. 4474. Kansas prison officials received the detainer on February 16, 2000, and informed Lybarger about it on February 18, 2000. Lybarger received written notice of the detainer in Case No. 5085 and his right to disposition of the charges on March 5, 2001.

The State issued a third detainer against Lybarger on Jackson County Case No. 6592, which involved first-degree robbery and armed criminal action charges unrelated to the Clay County charges. Lybarger received notice of the third detainer against him on December 27, 2000.

In February 2001, Lybarger agreed to sign the requests for disposition of the pending charges on the first and third detainers. He signed and submitted the request in Case No. 4474 on February 23, 2001. He signed and submitted the request in Case No. 6592 on February 27, 2001. Lybarger never signed the written notice and request for disposition of charges on Case No. 5085. However, his written requests in Case No. 4474 and Case No. 6592 included the following acknowledgement:

> Your request for final disposition will operate as a request for final disposition of all untried indictments, information or complaints on the basis of which detainers have been lodged against you from the state to whose prosecuting official your request for final disposition is specifically directed.... Your request will also constitute a consent by you to the production of your body in any court where your presence may be required in order to effectuate the purposes of the Agreement on Detainers[.]

Pursuant to Lybarger's signed request for disposition of the charges in Case No. 4474, the KDOC released him to the temporary custody of Clay County on April 4, 2001. By that time, the Clay County Circuit Court had dismissed Case No. 4474 because the single count of second-degree robbery was included in the five-count indictment in Case No. 5085. The court filed Lybarger's signed request in Case No. 5085, and the State proceeded to prosecute him in that case. A superseding indictment dropped one count, leaving Lybarger charged with two counts of second-degree robbery and two counts of attempted second-degree robbery. Between June 2001 and April 2003, Lybarger filed several motions requesting dismissal of the charges based on alleged violations of the IAD. All of the motions were denied after an evidentiary hearing.

At the jury trial, Lybarger was convicted on all four counts in Case No. 5085. He was sentenced, as a prior and persistent offender, to thirty-year prison terms on the second-degree robbery charges and twenty-year terms on the attempted second-degree robbery charges. The court ordered the Count I and Count III robbery and attempted robbery charges to be served consecutively, as well as Counts II and IV, for a total of fifty years imprisonment.

## II. POINTS ON APPEAL

### A. INTERSTATE AGREEMENT ON DETAINERS

In his first two points on appeal, Lybarger contends the trial court erred in denying his motions to dismiss the indictment in Case No. 5085 based on alleged violations of the IAD. Lybarger argues he only consented to be transferred to Clay County on the detainer in Case No. 4474 and, thus, the State had no jurisdiction to prosecute him on the charges in Case No. 5085. He further argues his constitutional due process rights were violated when the KDOC failed to promptly inform him of his right to disposition of the detainer lodged against him in Case No. 5085.

■ Our review is *de novo*, as both points raise questions of law as to whether the trial court properly applied the law in refusing to dismiss the indictment. *State v. Rousseau*, 34 S.W.3d 254, 259 (Mo.App. 2000). To the extent the application of law is based on the evidence presented, we view the facts in a light most favorable to the judgment, giving deference to the trial court's factual findings and credibility determinations. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998)

■ The IAD is a congressionally-sanctioned interstate agreement that permits a prisoner in one state to seek disposition of criminal charges filed against him by second state. *Lancaster v. Stubblefield*, 985 S.W.2d 854, 855 (Mo.App.1998). The primary purpose of the agreement is to provide for prompt disposition of detainers, and it must be liberally construed to effectuate this purpose. *State ex rel. Suitor v. Stremel*, 968 S.W.2d 221, 222 (Mo. App.1998); § 217.490, Art. IX.

As adopted by Missouri and other states (including Kansas), the IAD requires prison officials to "promptly inform" the prisoner of any detainer lodged against him and of his right to request final disposition of an indictment, information, or complaint pending in the second state. § 217.490, Art. III, ¶ 3. A prisoner's request for disposition of the charges must be in writing and shall operate as a request for final disposition of all untried charges for which detainers have been issued by the second state. *Id.* at ¶ 1, 4. Upon receipt of the written notice, the second state can take temporary custody of the prisoner and must dispose of the pending charges within 180 days. *Id.* at ¶ 1.

■ Pursuant to the IAD, the State of Missouri issued three detainers against Lybarger while he was incarcerated with the KDOC. Lybarger does not dispute that he was informed about the existence of all three detainers before he signed the request for disposition of the charges in Clay County Case No. 4474 and Jackson County Case No. 6592. Both written requests included an express acknowledgment that they would operate as a request for final disposition on all outstanding detainers. Thus, by executing these requests, Lybarger consented to be tried on any and all Missouri charges for which detainers had been lodged against him. *Id.* at Paragraph 4. Once he was transferred to Clay County based on the request in Case No. 4474, the State had jurisdiction to prosecute the five-count indictment in Case No. 5085 because Lybarger was fully aware that a detainer existed on those charges when he agreed to the temporary extradition.

The jurisdiction of Missouri courts was not affected by the dismissal of Case No. 4474 after Lybarger had submitted his written request of disposition in that case. Lybarger had agreed to be prosecuted on all pending detainers and not just the second-degree robbery charge in Case No. 4474. Moreover, regardless of the validity of his request in Case No. 4474, he signed an identical request for the final disposition of all charges in Case No. 6592. The State had alternative grounds for exercising jurisdiction over Lybarger in Case No. 5085 based on his agreement to be transferred to Missouri in Case No. 6592. Point I is denied.

■ Lybarger argues in Point II that his constitutional due process rights were violated because KDOC officials failed to "promptly inform" him of his right to request disposition in Case No. 5085, as required by the IAD. § 217.490, Art. III, ¶ 3. The KDOC informed Lybarger about the detainer in Case No. 5085 on February 18, 2000, just two days after receiving it from the State of Missouri. Lybarger contends,

however, that he did not receive *written notice of his right to request disposition* of the five-count indictment until March 5, 2001, more than one year after Kansas officials received the detainer. We note, initially, that written notice is not required in the IAD provision directing prison officials to "promptly inform" the prisoner of pending detainers.[2] *Id.* In addition, the record reflects factual disputes as to whether Lybarger was actually informed about his right to disposition of the charges in Case No. 5085 in February 2000, when he first learned about the detainer.

This factual issue was addressed by the trial court in ruling on the pretrial motions to dismiss. The court held a hearing on the motions, at which Lybarger declined to testify despite the fact that he had the initial burden, as movant, of presenting evidence to show a violation of the IAD. See *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 59 (Mo.App.1980). Following the hearing, the court made the following findings:

> From the evidence before the court, and evidence not presented, it is a fair inference that [Lybarger] was given advice of his rights pertaining to disposition of detainers by the Kansas authorities, but the formal paperwork that contains the written advice of such rights did not get prepared until [Lybarger] told the Kansas authorities he wanted to proceed.

> This is not the only Missouri case which resulted in a detainer. The written exhibits that were presented to the court reflect that the formal paperwork for disposition of detainers was always prepared when he advised he wanted to proceed and was not prepared when he advised he wanted to wait a while.

On [Lybarger's] motion, he had the burden of proof. He did not testify. He was a direct participant in everything that happened or didn't happen. It is another fair inference that he was not called as a witness because his testimony would not have supported his claim that he was not advised of his rights until the formal paperwork was prepared.

Based on the evidence and arguments presented at the motion hearing, the trial court concluded that Lybarger had received prompt verbal notice of his right to proceed on the charges in Case No. 5085, and that such notice was sufficient to satisfy the requirements of the IAD. We must defer to the court's factual determination that the verbal notice included information about the detainer and Lybarger's right to request disposition of the charges, because there is sufficient evidence in the record to support that finding. The parties offered conflicting documentary evidence on the issue of notice, and the court reasonably determined that Lybarger was unable to carry his burden of proof without testifying as to when he first knew about his right to request a final disposition of the charges in Case No. 5085.

We further find no error of law in the court's determination that the KDOC met its IAD obligation to "promptly inform" Lybarger by giving him verbal notice of his rights within two days after the Kansas officials received the detainer in Case No. 5085. § 217.490, Art. III, ¶ 3. The statute does not require that initial notice to the prisoner be made in writing, and nor does it specify a time period for prompt notification. In his brief on appeal, Lybarger concedes that notice provided to the prisoner within one year of the state's receipt

---

2. The IAD's "written notice" requirement applies only when the prisoner requests disposi-

tion of pending charges referenced in a detainer. § 217.490, Art. III, ¶¶ 1–2.

of the detainer would be reasonable and timely.[3] Accordingly, Lybarger's due process rights were not violated when the KDOC notified him of the detainer within a few days of its filing in Kansas. The trial court properly overruled his motion to dismiss. Point II is denied.

## B. SUFFICIENCY OF THE EVIDENCE

In his final point, Lybarger contends the trial court erred in denying his motion for acquittal because the evidence was insufficient to support the second-degree robbery charge in Count I. Specifically, he argues there was no evidence that he forcibly stole property in violation of Section 569.030.1.

■ Our review of this claim is limited to a determination of whether the record contains sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). We accept as true all evidence favorable to the State, including all favorable inferences to be draw from the evidence, disregarding inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993).

To obtain a conviction for second-degree robbery, the State must prove that the defendant forcibly stole property. § 569.030.1. Forcible stealing occurs when the defendant uses or threatens the immediate use of physical force upon another person for the purpose of:

(a) Preventing or overcoming resistance to the taking of the property or to the immediate retention thereof immediately after the taking; or

(b) Compelling the owner of such property or another person to deliver up

the property or to engage in conduct which aids in the commission of the theft[.]

§ 569.010(1).

■ In support of the Count I allegation of second-degree robbery, the State presented evidence that Lybarger entered a TCBY store in Clay County at approximately 8:00 p.m. on October 13, 1999. He approached a store clerk at a side counter and said, "This is a robbery." When the clerk asked if he was serious, Lybarger replied, "Yes, don't panic, give me the money out of the register." Lybarger kept his right hand in his pocket as he spoke to the clerk. The clerk testified she was fearful Lybarger had a weapon in his pocket. She removed $200 in bills from the cash register and gave them to Lybarger. He fled the store and was later apprehended by the Kansas police pursuant to a stop order.

Lybarger contends the State failed to prove he forcibly stole the money because there was no evidence he used or threatened physical force to compel the clerk to comply with his demand. Although the clerk believed Lybarger had a weapon because he kept his right hand in his pocket, Lybarger argues that he never made any motions with his right hand and, thus, the evidence was not sufficient to suggest the existence of a weapon.

Our court considered a case with remarkably similar facts in *State v. Duggar*, 710 S.W.2d 921 (Mo.App.1986). The defendant in *Duggar* had one hand in his jacket pocket as he told a store clerk to give him all of the money in the cash register. *Id.* at 922. The clerk asked if he was serious, and the defendant replied that he was. *Id.* Although the defendant ut-

3. Lybarger points out that the Uniform Mandatory Disposition of Detainers Act, a statute similar to the IAD, contains a provision requiring a jurisdiction to "promptly inform" a prisoner within one year of the filing of a detainer. § 217.450.2–3.

tered no threats, was not physically violent, and did not display a weapon, the clerk testified that he "felt threatened" and gave the defendant the money in the cash register. *Id.* Our court upheld the defendant's conviction for second-degree robbery, noting that the concealment of his hand in his pocket was evidence that he sought to intimidate or instill fear in the clerk. *Id.* We found the evidence was sufficient to prove the defendant threatened the use of physical force, as required by definitional provisions of Section 569.010(1). *Id.*

■ The facts here warrant a similar conclusion. The threat of physical harm need not be explicit; it can be implied by the defendant's words, behavior, or both. *Patterson v. State,* 110 S.W.3d 896, 904 (Mo.App.2003). Threatened physical force may be implied when the defendant engages in behavior that suggests he has a weapon, or from the use of fear-invoking phrases such as "This is a holdup." *Id.* The record establishes that Lybarger did both and, thus, the evidence was sufficient to support his conviction for second-degree robbery. Point III is denied.

### CONCLUSION

The judgment of conviction is affirmed.

All concur.