**STATE of Missouri, Plaintiff–Appellant,**

v.

**Danny R. WOODS, Defendant–Respondent.**

**No. 28697.**

Missouri Court of Appeals,
Southern District,
Division One.

April 24, 2008.

Motion for Rehearing and Transfer to Supreme Court Denied May 14, 2008.

---

1. We note that "writ of *coram nobis* ... are abolished." Rule 74.06(d).

John Daniel Patterson, Springfield, MO, for appellant.

Christopher S. Hatley, Springfield, MO, for respondent.

JEFFREY W. BATES, Judge.

Danny Woods (Defendant) was charged by information with two counts of tampering in the first degree. *See* § 569.080.[1] The trial court entered an order dismissing the information with prejudice based upon the State's alleged failure to bring Defendant to trial within the 180–day time limit specified in the Interstate Agreement on Detainers (IAD). *See* § 217.490. The State has appealed the dismissal. This

---

1. All references to statutes are to RSMo (2000).

Court reverses and remands the case for further proceedings.

On December 29, 2005, the Greene County prosecutor filed a felony complaint in case no. 305CF12156 charging Defendant with two counts of tampering with a motor vehicle. A warrant for Defendant's arrest was issued on the same date. Sometime in 2006, the prosecutor learned that Defendant was incarcerated in Oklahoma and requested that a detainer be placed on him. On December 14, 2006, the prosecutor received a typewritten, *pro se* document from Defendant entitled "Request for Final Disposition" (12/14 Request). The 12/14 Request referred to "Case 305–CF–12156" and requested "a final disposition of [Defendant's] case within one hundred eighty (180) days pursuant to the Interstate Agreement on Detainers Act." Defendant signed the request and provided his inmate number and the address where he was confined underneath his signature.

The circuit court did not receive a copy of the 12/14 Request. On January 3, 2007, a deputy clerk received a document from the Oklahoma Department of Corrections (Oklahoma DOC) entitled "Receipt for prisoner/documents/detainer" (1/03 Receipt). This document, which bore the signature of an Oklahoma DOC records supervisor, was prepared on December 21, 2006. The 1/03 Receipt identified Defendant by name and inmate number, and it contained the Missouri case number from the warrant. In relevant part, it stated:

The paragraph(s) checked below indicate(s) our disposition of the judgment/warrant/order:

. . . .

✓ A detainer has been filed against him/her in your favor. The prisoner's current release date is 6–28–07, and his/her parole eligibility date is _____. We will notify you approximately 30 days prior to release.

The 1/03 Receipt contained no request that Defendant's case be finally disposed. It was sent to the circuit court by regular mail and appears to have been a standard form generated by the correctional institution for its own use in keeping track of detainers against an inmate.

On March 6, 2007, the prosecutor and the circuit court received IAD Forms I through IV from the Oklahoma DOC. Form I was a notice to Defendant that a detainer had been lodged against him in connection with case no. 305CF12156. Form II contained Defendant's request that a final disposition be made of the charges in case no. 305CF12156. Form III was a certificate of inmate status containing all of the information specified in Article III, Paragraph 1, of the IAD. *See* § 217.490. Form IV was an offer to deliver temporary custody of Defendant to the prosecutor for trial of the charges pending in case no. 305CF12156. This was the first time that both the prosecutor and the circuit court had received written notice of Defendant's request for a final disposition of that case.

On April 19, 2007, the prosecutor accepted temporary custody of Defendant in connection with his request for final disposition of the charges against him. Within a week, Defendant made his first court appearance. He entered a not-guilty plea and had counsel appointed to represent him. On June 21, 2007, the felony information was filed. Defendant was arraigned the next day, and the case was scheduled to be tried to a jury on August 27, 2007.

On August 7, 2007, Defendant filed a motion to dismiss the case with prejudice. The motion alleged dismissal was required by the IAD because the 180–day time limit to bring Defendant to trial had commenced on December 14, 2006 and expired on June 14, 2007. Copies of the 12/14 Request and

the 1/03 Receipt were attached to the motion.

At the motion hearing, the court heard arguments of counsel and reviewed the 12/14 Request, the 1/03 Receipt and IAD Forms I–IV. Defense counsel argued the 180–day time limitation started running on December 14, 2006 because Defendant had made a good-faith effort to substantially comply with the IAD requirements. The prosecutor disagreed because the circuit court did not receive a copy of the 12/14 Request. She argued that March 6, 2007 was the first point in time when the prosecutor and the circuit court each had received written notice from Defendant that he was requesting final disposition of the pending charges against him. The court granted Defendant's motion for the following reason:

> I don't see notice to the Court, even though the statute says that's one of the technical requirements. I don't think, from the good-faith standpoint of the inmate, that that is required. And so at any rate, I think the motion is well taken in this case. I'm going to show it dismissed.

After the case was dismissed with prejudice, this appeal by the State followed.[2]

■ Whether the trial court properly interpreted and applied the IAD to the facts is a question of law which this Court reviews *de novo*. *State v. Vinson*, 182 S.W.3d 709, 711 (Mo.App.2006); *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo.App. 2005). To the extent the court's application of the law was based upon the evidence presented, we defer to the court's factual findings and credibility determinations. *State v. Davis*, 210 S.W.3d 229, 233 (Mo.App.2006).

■ The State presents two points, but only the first one will be addressed since it is dispositive. The State contends the trial court misapplied the law when it determined that Defendant's delivery of the 12/14 Request to the prosecutor alone was sufficient to trigger the commencement of the 180–day time limit for trial set forth in the IAD. The State argues that the IAD's time limit was not triggered until March 6, 2007, when both the prosecutor and the court received notice of Defendant's request for disposition. This Court agrees.

■ The IAD was adopted by Missouri and is set forth in §§ 217.490–.520. This congressionally-sanctioned agreement permits a prisoner in one member state to seek disposition of criminal charges filed against him by a second member state. *See Lybarger*, 165 S.W.3d at 184. The IAD's purpose "is to encourage the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." *Vinson*, 182 S.W.3d at 711. Insofar as relevant to the issues presented by this appeal, Article III, Paragraphs 1–2, set forth the applicable procedure to be followed:

> 1. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final dis-

---

**2.** The State is granted statutory authority to appeal the dismissal by § 547.200.2. *See State*

*v. Galvan*, 795 S.W.2d 113, 114 n. 2 (Mo.App. 1990).

position to be made of the indictment, information or complaint. . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

2. The written notice and request for final disposition referred to in paragraph 1 of this article shall be given or sent by the prisoner to the warden, director of the division of adult institutions or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

§ 217.490. It has been uniformly held that the 180–day limitation period in Article III of the IAD does not commence until the prosecutor and the circuit court have received a request for final disposition of an outstanding detainer. *See State v. Walton,* 734 S.W.2d 502, 503–04 (Mo. banc 1987); *Rivera v. State,* 106 S.W.3d 635, 639 (Mo. App.2003); *State ex rel. Suitor v. Stremel,* 968 S.W.2d 221, 224 (Mo.App.1998); *Yagovane v. State,* 923 S.W.2d 522, 523–24 (Mo. App.1996); *State v. Jenkins,* 778 S.W.2d 815, 816–17 (Mo.App.1989); *State v. Smith,* 686 S.W.2d 543, 546 (Mo.App.1985); *State v. Soloway,* 603 S.W.2d 688, 690 (Mo.App. 1980); *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo.App.1980); *State ex*

*rel. Hammett v. McKenzie,* 596 S.W.2d 53, 56–57 (Mo.App.1980). "This requirement of the statute recognizes a joint responsibility of the prosecutor and of the court to advance cases to trial, and therefore it requires the documents to be sent to both." *Saxton,* 598 S.W.2d at 590.[3] It is undisputed that the 12/14 Request was received only by the prosecutor. Based upon the foregoing authorities, that was insufficient to commence the running of the IAD's 180–day time limit. Defendant advances two arguments to sustain the lower court's ruling, but neither has any merit.

Defendant first argues the circuit court did receive notice in the form of the 1/03 Receipt, and the 180–day time limit therefore expired on July 3, 2007. This argument is unavailing because the judge made a factual finding that the circuit court did not receive notice. We defer to that factual finding, which is supported by evidence presented below. *See State v. Davis,* 210 S.W.3d 229, 233 (Mo.App.2006).

Citing *State ex rel. Suitor v. Stremel,* 968 S.W.2d 221 (Mo.App.1998), Defendant next argues that notice to the circuit court was unnecessary because he made a good-faith effort to substantially comply with the IAD's requirements. It is evident from the record before us that the trial court accepted this argument. In *Suitor,* this Court held that "if the prisoner makes a good-faith effort to invoke the Agreement, and he omits nothing essential to the statute's operation, his failure to comply strictly with its requirements will not be fatal to his claim." *Id.* at 223. There,

---

**3.** It is possible for a prosecutor, by his or her actions, to waive the requirement that a prisoner must also send his request for final disposition to the circuit court. *State v. Walton,* 734 S.W.2d 502, 503 n. 5 (Mo. banc 1987). Such waiver may be accomplished "by requesting, being offered, and receiving temporary custody of [the prisoner]." *Id.* at 502 n.

2; *State v. Smith,* 686 S.W.2d 543, 546–47 (Mo.App.1985); *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 591–92 (Mo.App.1980). This waiver principle has no application to the case at bar because the circuit court already had notice of Defendant's request before the prosecutor accepted temporary custody of Defendant on April 19, 2007.

however, the prosecutor and the court each received copies of the prisoner's request for final disposition of the detainer against him. *Id.* at 224. The deficiency in *Suitor* was the lack of the official custodian's certificate detailing the prisoner's term of commitment, time served and parole eligibility. *Id.* at 223–24. Because the certificate was not deemed an essential element of statutory compliance, its absence did not frustrate the prisoner's attempt to invoke his IAD rights. *Id.* at 224. Therefore, *Suitor* is factually distinguishable and provides no support for Defendant's argument.

As the western district of this Court held in *Yagovane v. State,* 923 S.W.2d 522 (Mo.App.1996), "a good faith effort to invoke § 217.490 is sufficient, but only if a prisoner does not omit anything essential. Notice to the appropriate court and the prosecutor, however, is essential." *Id.* at 523 (citations omitted). Because Defendant did not provide written notice of his request for final disposition of the detainer against him to the circuit court, he did not comply with the essential requirements of the IAD. *Id.* at 523–24. The trial court misapplied the law when it ruled that the lack of notice was a mere technical error that could be excused. *See Rivera v. State,* 106 S.W.3d 635, 639 (Mo. App.2003); *Yagovane,* 923 S.W.2d at 523. Point I is granted.

The judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

PARRISH, P.J., and SCOTT, J., Concur.