

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| vs. | ) | Nos. SD32661 & SD32662 |
| | ) | Consolidated |
| | ) | |
| KELLY ANN BURY, | ) | **Filed: March 25, 2014** |
| | ) | |
| Defendant-Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark E. Fitzsimmons, Associate Circuit Judge

**REVERSED AND REMANDED**

In these consolidated cases, the State appeals from the trial court's order dismissing a number of criminal charges against Kelly Ann Bury ("Defendant") based on an alleged violation of the Interstate Agreement on Detainers ("the IAD").[1] The State argues the trial court's decision was erroneous because Defendant's request for disposition was insufficient. We agree, reverse the trial court's judgment, and remand for further proceedings.

---

[1] The State is permitted to appeal such orders pursuant to Section 547.200.2. **State v. Galvan**, 795 S.W.2d 113, 114 n.2 (Mo. App. S.D. 1990). All statutory references are to RSMo (2000), and all rule references are to Missouri Court Rules (2013).

**Factual and Procedural Background**

In 2011 Defendant was charged in two Greene County, Missouri, cases with ten counts of forgery, two counts of identity theft, and one count of resisting arrest. On August 2, 2011, Defendant failed to attend a scheduled court appearance, and the trial court issued a capias warrant.

The trial court subsequently received a notice of incarceration from Ada County, Idaho. Then, on March 20, 2012, the trial court received a letter ("the March letter") from Defendant. That letter stated Defendant was serving a two-year sentence in Idaho and requested that Defendant be transported to Missouri to resolve her Greene County charges. The docket sheets do not show any action was taken in response to this letter.

On April 16, 2012, the trial court received a second letter ("the April letter") from Defendant. The April letter was similar to the previous letter but included a document titled "Motion to Be Transported to Answer Charges and Motion for Speedy Trial" which purported to invoke Defendant's rights under the IAD. Neither the March letter nor the April letter contained a certificate from the official having custody of Defendant.

On April 17, 2012, the trial court referred the case to the public defender. A preliminary hearing was scheduled for June 4, 2012.

On June 4, 2012, a hearing was held. The docket sheets show Defendant was "still in jail in Idaho." In open court, the judge gave the prosecutor a copy of

2

the April letter and instructed the prosecutor to arrange for Defendant to be brought to Missouri.[2] Then, the case was continued.

On February 25, 2013, yet another hearing was held. The only record of the hearing is a docket entry which (1) stated Defendant had not been transferred from Idaho and (2) set the case for a hearing regarding dismissal on March 25, 2013.

On March 4, 2013, the prosecutor received a letter from Defendant requesting disposition of her untried charges.

On March 25, 2013, the trial court held a hearing regarding the motion to dismiss. The parties agreed the motion to dismiss and arguments would apply to both of Defendant's pending cases. There is no record of what evidence, if any, was adduced at the hearing.

On April 1, 2013, the docket sheet reflects an IAD filing "with forms[.]" On April 10, 2013, the trial court dismissed the charges against Defendant in both cases without issuing findings of fact and conclusions of law. The State appeals.

## Discussion

In its sole point on appeal, the State argues the trial court erred in dismissing the charges against Defendant because the April letter was not a sufficient request for disposition under the IAD because there was no certificate

---

[2] The record on appeal does not include any transcripts and consists solely of the legal file. Thus, some of the pertinent facts appear only in the suggestions filed by the parties which describe what happened at the relevant hearings. As neither party disputes these facts, we treat them as facts of record. *See* ***State ex rel. Suitor v. Stremel***, 968 S.W.2d 221, 222 n.2 (Mo. App. S.D. 1998) ("Where the parties agree in their briefs concerning a fact, . . . this [C]ourt may consider it as though it appeared in the record.").

from the custodial officer and "the request did not contain the statutorily required information that should accompany the certificate."[3]  We agree.

"Whether the trial court properly interpreted and applied the IAD to the facts is a question of law which this Court reviews *de novo*." ***State v. Woods***, 259 S.W.3d 552, 555 (Mo. App. S.D. 2008).  Furthermore, a person seeking the IAD's protections bears the burden of proving he or she has complied with the four specific requirements of the IAD:

> (1) the person is incarcerated in one state (sending state);  (2) there are untried charges against the person in a second state (receiving state);  (3) the receiving state has lodged a detainer against the person on the basis of the untried charges;  and (4) the person has notified both the prosecuting attorney and the appropriate court of the prosecuting attorney's jurisdiction in the receiving state of his current place of imprisonment in the sending state and his request for final disposition of the untried charges.  § 217.490, Art. III, § 1. If these four criteria are met, then the receiving state must bring the person to trial on the untried charges within 180 days of the notification and request for disposition, or the charges must be dismissed.  ***Id.*** at § 4.  To establish a violation of the IAD, the person seeking its protection bears the burden of proving that the four criteria were satisfied.

***State v. Morrison***, 364 S.W.3d 779, 784 (Mo. App. W.D. 2012).  "Once a prisoner has gone forward with evidence showing that she has complied with all the specific requirements of the Interstate Agreement on Detainers, then the burden shifts to the State to produce evidence on the record that there was good

---

[3] The State also contends the request was insufficient because it was sent while Defendant was confined in a jail rather than in a prison.  Defendant asserts, and we agree, that this claim was not preserved because it was not presented to the trial court.  *See* ***State v. Lane***, 415 S.W.3d 740, 750 (Mo. App. S.D. 2013) (quoting ***State v. Wolf***, 326 S.W.3d 905, 907 (Mo. App. S.D. 2010)) ("[a]n appellant 'cannot broaden or change allegations of error on appeal[,]' and we will not convict the trial court of error on issues that were not presented below").  We decline to address the State's contention regarding Defendant's place of confinement at the time she made her request for disposition.

4

cause to delay trial beyond 180 days." *Id.* (quoting ***State ex rel. Hammett v.***

***McKenzie***, 596 S.W.2d 53, 59 (Mo. App. E.D. 1980)).

"The IAD is a congressionally-sanctioned interstate agreement that

permits a prisoner in one state to seek disposition of criminal charges filed

against him by [a] second state." ***State v. Overton***, 261 S.W.3d 654, 659 (Mo.

App. S.D. 2008) (quoting ***State v. Lybarger***, 165 S.W.3d 180, 184 (Mo. App.

W.D. 2005)). It was enacted because "charges outstanding against a prisoner,

detainers based on untried indictments, informations or complaints, and

difficulties in securing speedy trial of persons already incarcerated in other

jurisdictions, produce uncertainties which obstruct programs of prisoner

treatment and rehabilitation." § 217.490. Thus, the purpose of the IAD "is to

encourage the expeditious and orderly disposition of charges outstanding against

a prisoner and determination of the proper status of any and all detainers based

on untried indictments, informations, or complaints." ***Woods***, 259 S.W.3d at

555.

As pertinent to the present case, the IAD provides as follows:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having*

5

*custody of the prisoner*, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

§ 217.490, Art. III, § 1 (emphasis added). However, if the prisoner's request does not comply with the statute, the 180-day time period does not begin to run. *Jamison v. State*, 918 S.W.2d 889, 892 (Mo. App. W.D. 1996). *Cf. **State v. Sharp***, 341 S.W.3d 834, 840 (Mo. App. W.D. 2011) (noting that under the UMDDL "[b]efore the 180-day time period begins to run, both the prosecutor and the circuit court must receive the defendant's request for the disposition and the director's certificate.");[4] *see **State v. Soloway***, 603 S.W.2d 688, 690 (Mo. App. S.D. 1980) (noting that one of the reasons the defendant's request for disposition was insufficient was that the defendant's attorney admitted in open court that the defendant "had not had these things certified by the warden").

In many respects this case is similar to ***Jamison***. In ***Jamison***, the defendant filed a request for disposition with the court but failed to serve the motion on the prosecutor. ***Id.*** at 890. When the 180-day period had passed the defendant filed a motion to dismiss. ***Id.*** The prosecutor's office acknowledged receipt of that motion, but the motion was denied because the initial request had not been served on the prosecutor. ***Id.*** After a second 180 days, the defendant filed a second motion to dismiss. ***Id.*** That motion was denied as well. ***Id.*** The defendant pleaded guilty and in his post-conviction action, he claimed the trial

---

[4] The UMDDL is the Uniform Mandatory Disposition of Detainers Act. *See* § 217.450. It applies to in-state prisoners who are "confined in a department correctional facility[.]" ***Id.***; ***State ex rel. Clark v. Long***, 870 S.W.2d 932, 936 (Mo. App. S.D. 1994). However, "[b]ecause the UMDDL and the IAD are *in pari materia*, 'they are construed in harmony with each other, and the principles of one may be applied to the other.'" ***Morrison***, 364 S.W.3d at 785 n.6 (quoting ***Carson v. State***, 997 S.W.2d 92, 96 (Mo. App. S.D. 1999)).

6

court lacked statutory authority to accept his guilty plea under the IAD. ***Id.***[5]  In

support, he argued the 180-day time period began to run when he filed the first

motion to dismiss because at that time the prosecutor had notice that a request

for disposition had been filed.  ***Id.*** at 891.  The Western District of this Court

disagreed because the defendant "never claimed that he put the State in

possession of the accompanying certificate."  ***Id.*** at 891-92.  Thus, the Court

concluded, the defendant had failed to show the State had "knowledge of each of

the statutory items of information required to be set forth in the request and

certificate."  ***Id.*** at 892.  The reasoning for that conclusion was as follows:

> Knowledge that a request for final disposition has been filed is very
> different from being in possession of both the actual request and
> accompanying certificate.  The Interstate Agreement on Detainers
> sets forth numerous specific items that must be set forth in the
> request for final disposition which assist the prosecutor in moving
> the accused to trial.  § 217.490, Art. III, § 1.  Knowledge of the facts
> which must be set forth in a proper request is essential to getting to
> trial in 180 days.  The prosecutor's office must know where the
> accused is incarcerated and the length of the term of commitment.
> Without such facts, the prosecutor's office is hindered in its efforts
> to bring all charges to a final disposition within 180 days.

***Id.***

---

[5] The defendant and the appellate court in ***Jamison*** treated the claim as one of jurisdiction.
After the decision by the Supreme Court of Missouri in ***J.C.W. ex rel. Webb v. Wyciskalla***,
275 S.W.3d 248 (Mo. banc 2009), however, that characterization of the claim is no longer
appropriate. *See* ***Schmidt v. State***, 292 S.W.3d 574, 576-77 (Mo. App. S.D. 2009).  Instead,
when a statute speaks in jurisdictional terms, it should be read as merely setting statutory limits
on the relief a trial court may grant.  ***J.C.W.***, 275 S.W.3d at 255.  Nevertheless, to the extent
***Jamison*** discusses the requirements of the IAD, as opposed to the result of a finding of
noncompliance, it is still instructive. *See* ***State v. Molsbee***, 316 S.W.3d 549, 552-53 (Mo. App.
W.D. 2010) (assuming the underlying principle of law in a pre-***J.C.W.*** case remained valid even
though the case spoke in terms of jurisdiction rather than statutory authority).

Here, as in ***Jamison***, Defendant did not properly invoke the provisions of the IAD. The record on appeal does not contain a certificate from the official having custody of Defendant.[6]

In support of her argument that the trial court did not err, Defendant relies on ***State ex rel. Saxton v. Moore***, 598 S.W.2d 586 (Mo. App. W.D. 1980); ***Suitor***, 968 S.W.2d 221; and ***State v. Branstetter***, 107 S.W.3d 465 (Mo. App. W.D. 2003). Those cases are distinguishable.

***Saxton*** involved a prosecutor's waiver of the requirements. 598 S.W.2d at 591-92. Here, in contrast, nothing in the record indicates the prosecutor waived the requirements of the statute.

***Suitor*** was decided on two grounds, neither of which supports Defendant's argument. In ***Suitor***, the prosecutor argued, *inter alia*, that Suitor was not entitled to dismissal "because he failed to deliver his request to the official having custody of him, and consequently, no director's certificate was furnished to the prosecutor and court . . . ." 968 S.W.2d at 223. Despite that alleged noncompliance with the IAD, the prosecutor accepted temporary custody of Suitor and agreed to bring him to trial within the IAD time limit. ***Id.*** at 224. This Court held that the prosecutor's acceptance waived his complaints. ***Id.*** In the case at bar, nothing in the record before us supports a waiver argument.

The alternative holding in ***Suitor*** also does not aid Defendant. The record in ***Suitor*** showed that the relator requested a certificate from his custodial

---

[6] Although there is a docket entry made shortly before the dismissal reflecting an IAD filing "with forms[,]" the only "form" in the legal file was an Agreement on Detainers Form VII Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoners Request for Disposition of a Detainer which was directed to the warden in Pocatello, Idaho, in response to Defendant's Request for Disposition dated March 21, 2013.

official, and the official failed to provide one. *Id.* We noted that, "[w]hen an irregularity in compliance with the Agreement results from the failure of the official having custody of the prisoner to perform the official's duty according to the statute, and does not result in the omission of an 'essential' element of compliance with the statute, it will not frustrate the prisoner's attempt to invoke his rights." *Id.* at 223-24. Based upon those facts, we held that "the record indicates substantial compliance with the Agreement by Relator without the omission of 'essential' requirements of the statute." *Id.* at 225. Here, in contrast, Defendant did not introduce any evidence showing the custodial authority refused or failed to act to produce the certificate.

*Branstetter* is distinguishable for the same reason. There, the defendant adduced evidence that he attempted to get the necessary certificates, but the custodial authority would not issue the certificates because no detainer had been lodged. 107 S.W.3d at 470. Accordingly, *Branstetter* is factually distinguishable from the case at bar.

Although we acknowledge courts generally do "not require 'literal and exact compliance by the prisoner with the directions of the Agreement[,]'" *Saxton*, 598 S.W.2d at 589-90, as a practical matter, the prosecutor still must be provided with the information necessary to act on the request and thus to start the clock running. *See Jamison*, 918 S.W.2d at 892. Without the certificate of the official having custody of Defendant, the prosecutor in the present case did not have essential information and Defendant's letters did not trigger the 180-day limitation. The trial court erred in granting Defendant's motion to dismiss.

The State's sole point is granted.

9

## Decision

The trial court's judgment is reversed, and the case is remanded for further proceedings.

MARY W. SHEFFIELD, J. - OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

DON E. BURRELL, J. - CONCURS