

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI,      )
                               )
     Plaintiff-Respondent,      )
                               )
v.                                   )      No. SD33020
                               )
DALE ALLEN SEVERANCE,      )      **Filed: Nov. 6, 2014**
                               )
     Defendant-Appellant.      )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

**<u>AFFIRMED</u>**

This appeal concerns whether the Interstate Agreement on Detainers ("the IAD") required the dismissal of the criminal case pending against Dale Allen Severance ("Defendant"). *See* section 217.490 et seq.[1] Because Defendant did not materially comply with the requirements of the IAD -- and the State did not waive those requirements -- we answer that question in the negative and affirm Defendant's felony convictions for driving while intoxicated ("DWI") and driving while license revoked ("DWLR"). *See* sections 577.010 and 302.321.

---

[1] References to section 217.490 are to RSMo 2000. Unless otherwise indicated, other statutory references are to RSMo Cum. Supp. 2010.

**Applicable Principles of Review and Governing Law**

> Whether the trial court properly interpreted and applied the IAD to the facts is a question of law which this Court reviews *de novo*. *State v. Vinson*, 182 S.W.3d 709, 711 (Mo.App.2006); *State v. Lybarger*, 165 S.W.3d 180, 184 (Mo.App.2005). To the extent the court's application of the law was based upon the evidence presented, we defer to the court's factual findings and credibility determinations. *State v. Davis*, 210 S.W.3d 229, 233 (Mo.App.2006).

*State v. Woods*, 259 S.W.3d 552, 555 (Mo. App. S.D. 2008).

"The IAD is a congressionally-sanctioned interstate agreement that permits a prisoner in one state to seek disposition of criminal charges filed against him by [a] second state." *Lybarger*, 165 S.W.3d at 184. Section 217.490, Art. III.1 of the IAD provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

Section 217.490, Art. III.2 provides that the prisoner is to provide the "written notice and request for final disposition" to the "warden . . . or other official having custody of him[.]" That official is then directed to forward those documents "with the certificate to the appropriate prosecuting official and court[.]" *Id.* The 180-day time limit "does not commence until the prisoner's request for final disposition of the charges against him has

actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex v. Michigan*, 507 U.S. 43, 52 (1993); *see also* ***Carbaugh v. State***, 348 S.W.3d 871, 878 (Mo. App. S.D. 2011).

"[I]f the prisoner's request does not comply with the statute, the 180–day time period does not begin to run." ***State v. Bury***, ____ S.W.3d ____, No. SD32661, 2014 WL 1226933 at *3 (Mo. App. S.D. Mar. 25, 2014).  For purposes of determining compliance, the IAD is to be construed liberally so as to favor the purpose of promptly disposing of such detainers. *Lybarger*, 165 S.W.3d at 184; *see also* section 217.490, Art. IX.

> When an irregularity in compliance with the [IAD] results from the failure of the official having custody of the prisoner to perform the official's duty according to the statute, and does not result in the omission of an "essential" element of compliance with the statute, it will not frustrate the prisoner's attempt to invoke his rights.

***State ex rel. Suitor v. Stremel***, 968 S.W.2d 221, 223-24 (Mo. App. S.D. 1998).

### Facts and Procedural Background

Defendant does not challenge the sufficiency of the evidence supporting his convictions.  We therefore focus on the procedural history of the case.

Defendant was arrested on June 26, 2011 in Springfield, Greene County, Missouri for DWI.  A felony information filed in February 2012 charged Defendant with the DWI and also added the DWLR charge.  While the case was pending, Defendant was incarcerated in the Kansas Department of Corrections ("KDOC").  A docket entry memorializing a July 18, 2012 pretrial conference indicated that the State was "to writ [Defendant] from [KDOC]." On July 27, 2012, the trial court issued a bench warrant to act as a detainer, and Defendant learned within a couple of weeks that the detainer had been lodged against him.

3

On October 9, 2012, Defendant, who was represented by counsel, filed a hand-written, *pro se* pleading entitled "Defendants [sic] Motion For Judgement [sic] and Disposition" ("the initial motion").  The initial motion was signed by Defendant, and it made no reference to counsel.  It asserted that Defendant had been "in [c]ustody in the State of Kansas since July 13, 2012 [sic]" and that he had been "sentenced to 20 mos. in [KDOC.]"  It requested that the trial court order "Final Disposition[,]" and it contained the name and address of a specific prison facility beneath Defendant's signature.  The trial court provided a copy of the initial motion to the prosecutor the following day.

On November 2, 2012, Defendant, again acting directly instead of through counsel, sent a letter addressed to "whom it may concern" at the Greene County courthouse that requested a "report of action" concerning his case.  On the 26th of that month, another letter from Defendant "request[ed that he] be brought to Missouri[.]"  This letter asserted that Defendant's 20-month Kansas sentence began on "6-3-2012 [sic.]"

On October 24, 2012, Defendant's counsel filed a motion to withdraw from the case, along with a notice that the motion would be taken up on November 30, 2012.  On the date set for the hearing, four items from Defendant were received and shown as filed:  (1) a hand-written document that stated Defendant "do[es] hereby Plead Guilty, in exchange for ANY period of incarceration that this court deems just and fair, providing that the term does not end on, or after Aug. 3rd of 2013"; (2) a hand-written letter discussing his representation and opposing his attorney's attempt to withdraw; (3) a copy of counsel's motion to withdraw; and (4) a document entitled "UNIFORM M[AND]ATORY DISPOSITION OF DETA[IN]ER ACT" ("the November statement").  The November statement, which stated it was submitted

4

pursuant to "K.S.A. 22-4301[,[2]]" sought "either [Defendant's] detainer being dismissed or that [he] may be taken from this institution to stand trial." It referenced two Greene County warrants, but it did not include any information about Defendant's Kansas sentence or the time remaining to be served on it. The November statement was signed by Defendant, but it was not notarized or certified by anyone. The trial court granted counsel's motion to withdraw that same date.

On March 19, 2013, a new set of documents was filed with the trial court, and the State does not dispute that it received a duplicate set. The documents included: (1) a notice of Defendant's Kansas imprisonment, which also requested disposition of the instant case ("notice and request"); (2) a document from the warden of the Norton Correctional Institution entitled "OFFER TO DELIVER TEMPORARY CUSTODY" ("offer of custody"); and (3) a certified statement from KDOC officials that contained detailed information about Defendant's Kansas sentence ("the certificate"). The certificate stated that Defendant was committed to KDOC "on 06/13/2012 to a term of 20 month(s)[,]" he had served nine months and five days with six months and 25 days remaining, he had one month of good time credit as of November 3, 2013, and he had not been before the parole board.

On April 17, 2013, the State filed a "PROSECUTOR'S ACCEPTANCE OF TEMPORARY CUSTODY OFFERED IN CONNECTION WITH A PRISONER'S

_____

[2] Another document -- entitled "UNIFORM MAN[DAT]ORY DISPOSITION OF DETAIN[ER] ACT PURSUANT TO K.S.A. 22-4301" and purportedly signed by Defendant on September 26, 2012 ("the September statement") -- was filed with the trial court at some point, but it was not file-stamped with a date, the docket entries make no specific reference to it by name, the initial motion does not reference it, and it appears in the legal file on the page immediately prior to the initial motion. Defendant's signature on the September statement was notarized, but the document was not certified by anyone. It stated that Defendant was committed to KDOC "on 6/3/2012 [sic]" for a 20-month term; three months had been served; one year and three months remained; good time credit of ten days had accrued as of August 3, 2012; and no proceedings had occurred before the parole board. Section 22-4301 of the Kansas statutes addresses intrastate detainers. Chapter 22, Article 44 of the Kansas statutes sets forth that state's interstate agreement on detainers. All references to Kansas statutes are to Kan. Stat. Ann. (West 2014).

REQUEST FOR DISPOSTION OF A DETAINER" ("acceptance"). The Greene County warrant related to the case was served on Defendant on May 31, 2013, and Defendant was transported to Greene County.

New counsel for Defendant was appointed on June 3, 2013, and Defendant's jury trial commenced on September 10, 2013 -- a date within 180 days of the date of the filing of the notice and request (with its accompanying certificate), but more than 180 days from the date the initial motion was forwarded by the trial court to the prosecutor.[3] Two days before trial commenced, Defendant's new counsel filed a motion to dismiss the case on the ground that it was time-barred by the IAD.

The motion to dismiss referenced the initial motion (filed on October 9, 2012), and it asserted that because Defendant had not been tried within 180-days from that date -- "through no fault of his own[,]" -- the trial court was "without jurisdiction to proceed further except to dismiss." The State responded with "**SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS[.]**" These suggestions claimed that the IAD had not been violated because the initial motion had not been sent to the prosecutor's office, a proper certificate was not included with it, and the information the certificate would have provided was not otherwise included in the motion.

An evidentiary hearing on the motion to dismiss ("the hearing") was held on September 9, 2013. During the hearing, Defense counsel asked Defendant to identify a document that was neither marked nor admitted as an exhibit; it was described as having the title of "Uniform Mandatory Disposition of Detainer Act Pursuant to K.S.A. 22-4301." It

---

[3] After the jury found Defendant guilty of both offenses, the trial court sentenced Defendant to serve consecutive sentences of six years for DWI and two years for DWLR, executing those sentences pursuant to section 217.362 (providing the possibility of probationary release after completion of a long-term treatment program).

6

purportedly contained "a notarized statement of" Defendant with a notary date of September 26, 2012. It did not have "a file-stamp date[,]" but it was present in the trial court's file. The trial court took judicial notice of the document, but in referring to it, defense counsel did not specifically suggest that it was either a part of or had been filed with the initial motion. Although we cannot be certain, we presume from its description that the referenced document was the September statement.

The State stipulated that it had received a faxed copy of the initial motion from the trial court on October 10, 2012. The stipulation did not address whether the September statement was either included in the initial motion or had otherwise been presented to the State prior to the hearing. Defendant testified that he prepared the initial motion himself, and he sent it to his prior counsel with a letter. Defendant believed that his previous counsel then filed the initial motion on his behalf.

Defendant testified that he "eventually inquired about it [the disposition of the detainer] through the people in [KDOC,]" and "they" informed him that if he authorized a $13 fee disbursement "they [would] take care of it for [him]." Defendant said that "the last paperwork" was then filed, and he was brought to Greene County about "a month and a half after that."

The trial court, after taking the matter under advisement overnight, found that while Defendant had made a "good faith effort[,]" and the State received "notice of [the initial motion] . . . . that filing lacked an essential element, consisting of the certification from the State of Kansas." The trial court denied the motion to dismiss, and Defendant's trial commenced.

7

Defendant's subsequent motion for new trial contended that the trial court "erred by overruling Defendant's motion to dism[iss] and failing to dismiss the cause with prejudice." In arguing the motion, defense counsel conceded that there was no evidence that Defendant had communicated with "the warden or prison officials in Kansas" in connection with the initial motion. The trial court denied the motion for new trial and sentenced Defendant as previously noted. This appeal timely followed.

**Analysis**

Defendant's point on appeal claims the trial court erred in denying his motion to dismiss

> in that [Defendant] made a sufficient good faith effort to invoke and substantially comply with the provisions of the IAD by filing [the initial motion] for disposition of the charge[s] against him, which was acknowledged by the trial court and forwarded to the State, and yet the State failed to bring [Defendant] to trial within [the] 180-day time period specified by the IAD.

We disagree.

In support of his point, Defendant argues that the September statement was included with the initial motion, and that the initial motion "was delivered to the State by the trial court so it had proper, actual notice" on October 10, 2012 so as to start the 180-day period on that day.[4] He further argues that he "made a good faith effort to comply with the IAD's requirement of a director's certification by providing a document that included the information regarding his sentence and parole status[.]"

Defendant relies on *Suitor*, 968 S.W.2d at 223-24, where we stated that "if the prisoner makes a good-faith effort to invoke the [IAD], and he omits nothing essential to the statute's operation, his failure to comply strictly with its requirements will not be fatal to his

---

[4] Defendant does not claim that the documents he filed in November 2012 triggered the start of the 180-day time limit.

claim." *Id.* at 223. While it was asserted in *Suitor* that the defendant's notice "did not contain the director's certificate requirements[,]" the record "partially contradicted" that claim. *Id.* at 224. The "'[c]ertificate' attached to the [defendant's motion] recite[d] that a copy was mailed to the records officer of [the defendant's] place of incarceration." *Id.* More importantly, the prosecutor had treated the defendant's motion as sufficient to invoke the IAD by executing an "'Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer[.]'" *Id.* at 222, 224. We found that the prisoner had "delivered his request for disposition of the detainer against him to an official having custody of him, that the . . . prosecutor and circuit court received copies of his request, and that 180 days elapsed between his request and his motion for dismissal." *Id.* at 225.

We have previously described -- in dicta -- certain language from *Suitor* as finding that "the certificate was not deemed an essential element of statutory compliance[.]" *Woods*, 259 S.W.3d at 557 (reversing the dismissal because the defendant did not notify the trial court of his request for disposition).[5] The decision in *Suitor* turned upon two things, neither of which is present in regard to the initial motion. First, the defendant in *Suitor* *did* send his request for disposition to the prison holding him. 968 S.W.2d at 225. Second, and more

_____

[5] Other cases have construed similar provisions regarding intrastate detainers. *See* the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), section 217.450 *et seq.* Principles regarding similar provisions of the UMDDL may be applied to the IAD as these laws relate to the same general subject. *See Bury*, 2014 WL 1226933 at *3 n.4, and the cases cited therein. We are aware of three UMDDL cases where a failure to provide a certificate from a prison official was not dispositive, but those cases again involved some interference by an official. *See State v. Branstetter*, 107 S.W.3d 465, 472 (Mo. App. W.D. 2003) (defendant's failure to obtain certificates was not fatal where the trial court found that the prison did not issue certificates after advising the defendant that a detainer had not been lodged); *State ex rel Clark v. Long*, 870 S.W.2d 932, 939-40 (Mo. App. S.D. 1994) ("irregularities in the procedural requirements were caused by the prison officials" where a detainer was not required under the UMDDL at that time and defendant's request without a certificate was mailed to the prosecutor instead of the prison holding him after the defendant had been told by a prison official "that, in the absence of a detainer, he could not file the request through the prison officials"); *State v. Galvan*, 795 S.W.2d 113, 116, 118 (Mo. App. S.D. 1990) (the State did not contest defendant's filing without a certificate and there was evidence that defendant did not file his request through prison officials because an official told the defendant that he "would have to file the motion on his own").

importantly, the prosecutor in *Suitor* had waived the requirements of the IAD by sending an acceptance of temporary custody to the prison in which the defendant was being held. *Id.* at 224, 225.

In *State ex rel. Saxton v. Moore*, 598 S.W.2d 586, 590 (Mo. App. W.D. 1980), the Western District found that a defendant's exercise of "self-help" in sending IAD forms directly to the prosecutor and his failure to send his request for disposition to the prison holding him was not fatal to his invocation of the IAD's 180-day time limit. The opinion reasoned:

> The courts have generally held that the [IAD] does not require literal and exact compliance by the prisoner with the directions of the [IAD] in order to avail himself of its benefits. If the prisoner makes a good-faith effort to bring himself within the [IAD's] purview, and omits nothing essential to the [IAD's] operation, then his failure of strict compliance will not deprive him of its benefits. It is the scheme of the [IAD], as it has been construed by the courts, to place the onus of compliance upon the officials of the incarcerating and receiving states, rather than upon the prisoner. The officials are generally in better position to advance the case and to secure cooperation from each other than is the prisoner.

*Id.* at 589-90.

We have no disagreement with this statement of the law, but it is significant to note that in *Saxton*, a letter the defendant sent to the prosecutor prompted a legal intern in that office to send a reply to the defendant informing him that he should send specific forms, including a "Certificate of Inmate Status" to the prosecutor's office. *Id.* at 587 & 588 n.1. That letter did not indicate that the defendant needed to first send the forms to the prison and then also provide them to the trial court; instead it affirmatively stated that upon receipt of the forms, the prosecutor's office could proceed on the detainer. *Id.* at 588 n.1. When the defendant complied with the only directive included in the intern's letter, the prosecutor sent an acceptance of temporary custody form to the prison holding the defendant. The prison

10

refused to turn over the defendant until it had made an offer of temporary custody and additional paperwork was completed. *Id.* at 588-89. The court found under these circumstances that the prosecutor and prison were not disadvantaged by the defendant's failure to first send the forms to the prison and that the prosecutor had waived the requirement of notification to the trial court. *Id.* at 590, 591-92.

The significance of the certificate has been acknowledged in other decisions involving the IAD. In *Bury*, the "[d]efendant did not properly invoke the provisions of the IAD" where no "certificate from the official having custody of [d]efendant" was part of the record. 2014 WL 1226933 at *3. In *Jamison v. State*, 918 S.W.2d 889, 892 (Mo. App. W.D. 1996), the court pointed out that "[k]nowledge that a request for final disposition has been filed is very different from being in possession of both the actual request and accompanying certificate." The court found that "[e]ven if [movant] had made the request part of the record, [he] never claimed that he put the State in possession of the accompanying certificate." *Id.* at 891-92. As a result, the movant "failed to present any evidence that the State was in possession of an actual copy of the request *and* accompanying certificate." *Id.* at 892 (emphasis added).

In the instant case, the record is insufficient to prove that the September statement was included with the initial motion, and, even if it had been, Defendant does not claim that it was certified by any KDOC official. Defendant testified at the hearing that he sent the initial motion to his counsel; he did not claim that he sent any request to KDOC to prepare a certificate to accompany the motion. Only later did he involve staff at KDOC in making his request for disposition. As noted in *State v. Mangum*, 291 P.3d 44, 51 (Idaho Ct. App. 2012),

11

[t]here also exists good reason for the statute's requirement that the information be in the form of a certificate forwarded *via* the sending State's correctional authorities as opposed to transmitted informally by the prisoner, as initially occurred here. Namely, it assures the receiving state that the information obtained is accurate and current.

Here, the initial motion asserted that Defendant was taken into custody in Kansas on July 13, 2012. Assuming, *arguendo*, that the September statement was included with the initial motion and was forwarded by the trial court to the prosecutor's office on October 10, 2012, it asserted -- contrary to the initial motion -- that Defendant was committed to KDOC on June 3, 2012. And neither of these internally inconsistent dates was consistent with the date ultimately provided by KDOC, which certified that Defendant's commitment date was June 13, 2012.

Under the circumstances present in the instant case, we hold that the initial motion did not trigger the IAD's 180-day time limit because: (1) Defendant did not demonstrate that he attempted to have a KDOC official certify Defendant's "term of commitment[,] . . . the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner" as required by section 217.490, Art. III.1; and (2) no evidence indicated that the State engaged in any activity in response to the initial motion that could be considered as a voluntary waiver of any of the requirements of the IAD.

Defendant's point is denied, and the judgment of conviction and sentence is affirmed.


DON E. BURRRELL, J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

GARY W. LYNCH, J. - CONCURS

12